STATE v. ALLISON SPEAKS.

*Jury—Challenge to the Array—Expert—Deadly Weapon— Judge's Charge—Abuse of Privilege.*

1. A challenge to the array can only be taken, when there is partiality or misconduct in the sheriff, or some irregularity in making out the list.

2. Where the sheriff returned to a writ for a special *venire* that he had not summoned one of the jurors because he was dead, and that he had not summoned three others, because they could not be found : *It was held,* no ground for a challenge to the array.

3. A physician who qualifies himself in other respects, is not precluded from testifying as an expert, because he has not been examined by the State Board of Medical Examiners.

4. Where a witness is asked with a view to corroborate, whether he has not made the same statement before being examined, he may testify that he has made the same statement before going on the stand, but he cannot tell other things said in the same conversation, which were not brought out on the first examination.

5. What was the instrument used to occasion the death, is a question for the jury ; whether or not it is a deadly weapon, is to be decided by the Court.

6. It is not error in the trial Judge, to refuse an instruction not warranted by any view of the case, nor should he give a charge which involves a mere abstract proposition of law, not raised by any evidence in the case on trial.

7. Where the bill charged that the killing was done with a rock, and the Judge charged the jury that if the killing was done with a rock, *or other missile,* &c.; *It was held,* not to be error, as it is immaterial whether the killing was done

55

with the weapon charged in the bill, or with some other instrument of the same nature and character.

8. An exception that the prosecuting attorney used improper language and arguments in his address to the jury, will not be considered, when it is not made until after the verdict was rendered.

(*State* v. *Sheets*, 89 N. C., 543; *State* v. *Cole*, at this Term; *State* v. *West*, 6 Jones, 505; *State* v. *Collins*, 8 Ired., 407; *State* v. *Martin*, 2 Ired., 101; *Walker* v. *Baxter*, 1 Ired., 203; *State* v. *Gould*, 90 N. C., 658; *State* v. *Suggs*, 89 N. C., 531; *Horah* v. *Knox*, 87 N. C., 483, cited and approved).

INDICTMENT FOR MURDER, tried before *Montgomery, Judge*, at Fall Term, 1855, of IREDELL Superior Court.

The prisoner was charged with the murder of Noah Mason, in the county of Iredell, on the first day of February, 1885.

At the request of prisoner's counsel, one hundred names of jurors were drawn from the jury box of said county, in accordance with the provisions of §1739 of The Code. A writ of *venire* was issued to the sheriff of said county, who made due return thereof, that he had summoned all the persons named therein, except four, and as to them, he returned that one was dead, and the others were not to be found. All the jurors answered to the call except these four, and on the failure of these four to answer, the prisoner challenged the array, and assigned for cause, the failure of these four to answer, and the sheriff's return. The challenge was overruled, and the prisoner excepted. The jury was obtained before the prisoner exhausted his peremptory challenges.

On the trial, the following is the substance of the material parts of the testimony:

Thomas Redman, a witness for the State, testified that he knew deceased—lived a mile from him—he was dead—saw him when he was knocked down; it was between his, witness's house, and Allison Speak's; he and the prisoner had had a quarrel about seven and a half cents, which the witness owed him—prisoner cursed him—witness told him if he would go off, he would pay him; prisoner continued to curse him; he saw the prisoner no more until up in the road, he commenced cursing

witness—they quarrelled awhile, and prisoner went up the road. Lee Shoemaker came up, and he, witness, Jim Pratt, and the deceased, were standing together, not three steps apart, when the rock was thrown; it was not more than half an hour after he had last seen the prisoner, before the rock was thrown; the rock knocked the deceased down; it hit him over the eye, and he got up and said, "Oh Lord!"—and as he was getting up more rocks were thrown; prisoner had said when he was cursing witness, that he would whip him or die. Witness had been threatening to whip Speaks; he went next morning to where the deceased had been knocked down, and got the deceased's hat, and found a rock beside it. "It was a sorter long flint rock, weighing one and a half or two pounds—it was burst in three pieces, and on putting the pieces together, they fitted. There were no more rocks there, except where he threw them."

James Pratt, a witness for the State, testified that the prisoner and Thos. Redman had had a fuss at the election ground that day, and he, the deceased, Thomas Redman, and Lee Shoemaker, were returning together from the election ground; the prisoner came up behind them cursing—said he could whip any man in the crowd. He swore "he would whip Redman that night or die." Redman said he wouldn't. About that time, Jasper Smith came up, and said, "Is there anybody that wants to fight?" witness said, "No, or there would have been a fight before now." Smith jumped off his mule and made at prisoner, who ran, and it was only a few minutes after prisoner ran off, before the rock was thrown. There were four rocks thrown altogether, and he could have touched all the parties when the rock was thrown. He heard a noise, and went out in that direction, and saw the bulk of a man, about twenty steps off, running, but could not tell who it was. He saw the rock next morning; it was broken into two pieces, and would weigh two or three pounds. Mason died in five days after he was struck. He also testified that the prisoner was five feet five inches high, and Thomas Redman much higher and stouter. That he heard a pistol fire in the

direction of the lane, before the difficulty, and heard the rock strike Mason.

Lee Shoemaker, examined by the State, testified that a little after sun-down, he left the election ground; that he, Redman, Pratt, and deceased being together, saw a man sitting on a log; he went up to him, and found it was the prisoner. He said the crowd was against him. A quarrel commenced between him and Redman, and he saw the prisoner pick up a piece of rock. Witness and deceased went on, and were soon joined by Redman and Pratt, and Mason was knocked down by something, and said, "Oh, Lord." About that time he heard the second rock, or something, hit a limb over his head, and that neither he, Redman nor Pratt threw the rock.

Jasper Smith testified, that he did not throw the rock at deceased; that he heard the parties quarreling—went to them, saw deceased, Jim Pratt, and Thomas Redman. Redman had off his coat, was talking loud and abusing the prisoner. Witness said, "Boys, if you are going to fight, why don't you do it?" Prisoner was eight or ten steps up the road. Witness said, "Are three of you afraid of one man?" Redman said " he won't fight, every time we go to him he runs." Witness went towards prisoner, and he ran, and witness left in a few minutes.

G. W. Holler, witness for the State, testified that he saw the prisoner the next morning after the difficulty, and he said if Mason was knocked down, he reckoned it was a mistake in throwing the rock. A day or two afterwards, he was at the house of witness, and said that he was accused of throwing the rock, but was innocent. Witness said to him, "If I was guilty, I would take one of those horses and leave," but he made light of it, and said, " he would come out of it for twenty dollars."

One Mayberry, another witness for the State, testified that he had prisoner in his custody, and he slipped off, and he never saw him again until here in Court. It was thick dusk when he got home from the election ground ; saw the prisoner in the road; he appeared to be drinking, and was staggering about; that he

heard the quarreling up the road, but heard a pistol fire as he was leaving the election ground. When he put up his horse, he could distinguish the bulk of a horse twenty-five yards, but could not have told a man twenty-five yards. He went to the place where deceased was knocked down next day, and saw some scattering rocks.

Dr. White was then examined for the State, and testified that he was a practicising physician; had been practicing for twenty months; had attended one course of lectures, and had practiced in surgery, and had sufficient learning to form an opinion upon the branches of his profession, but that he had not been examined by the State Board of Medical Examiners. The prisoner objected to his testimony, on the ground he had never been examined by the Board. The objection was overruled, and the prisoner excepted. The witness then testified that he had been called to see the deceased on the Thursday after he was knocked down on the Tuesday previous. He examined the wound, which was over the left eye. It was a compound fracture of the frontal bone, and the wound caused the death of the deceased. The deceased was not rational from the time he saw him.

Mason, the father of the deceased, was next examined in behalf of the State, who stated that he saw the deceased the next morning after he was hurt, lying by the roadside on the mountain, about 11 o'clock. He was unable to get up, but was in his right mind. He said he was going to die; that Allison Speaks had thrown a rock at Thomas Redman, and hit him; he saw Allison when he threw. Allison and he had never had a word; that he, Thomas Redman, Jim Pratt, and Lee Shoemaker, were standing together; he saw a man squatting in the fence corner; that he stooped down, and was looking at him through the "element" light when he was knocked down, and it was Allison Speaks.

Elihu Speaks testified, on the part of the State, that he heard the prisoner say, after the difficulty, that he had to leave the road, he could not fight the crowd. Witness asked him who

threw the rock, and he said he did not know, but it did not hit the man it was thrown at.

Adly Hardin was examined for the defense, and testified that the deceased came to his house after dark, on the night he was hurt. Witness asked him who did it, and he said he did'nt know.

Several witnesses for the defence, testified that they saw the deceased two or three times after he was hurt, and they did'nt think he had any sense.

The prisoner was then examined in his own behalf; gave a long account of the quarreling between himself and Redman— said he had been drinking off and on all day, but recollected what occurred; he did not know anything about deceased being knocked down, and made a general denial of those parts of the conversation with him, as testified to by the State's witnesses, which were prejudicial to him.

Mrs. Mayberry, a witness for the prisoner, testified that after her husband came from the election, she heard the fuss, and went up to the stable where he was—heard the quarreling—"heard some one accuse another of stealing—reply—damned lie—some one said that won't do—heard two licks—went to the house— there was a crowd at the house, counting the votes." On cross-examination, she said she was not certain she heard any licks, but they sounded like licks. On redirect-examination, she was asked if she had made the same statement to anybody else, that she had testified to here? The Solictor objected, and stated he had not, and did not intend to impeach her. The Court overruled the objection, and permitted the witness to answer the question, and she replied that immediately after the occurrence, she had told her husband the same thing, and she went on to state, that she had told her husband that *she thought some one was killed,* but this latter part of her statement was held to be unimportant, and was excluded, but the Court admitted the rest. The prisoner's counsel excepted to this ruling.

The prisoner's counsel asked the following written instructions:

1st. The killing of the deceased not being admitted in this case, it is necessary for the jury to be satisfied from the evidence, beyond a reasonable doubt, that the deceased was killed by the prisoner, before they can convict him of any offence.

2nd. That from the size and shape of the rock, alleged by the State to have been thrown by the prisoner at the deceased, and the manner and distance from which it was thrown, the Court cannot say as a matter of law, that it was a deadly weapon, but must leave that with the jury as a matter of fact.

3d. That if the jury believe that the deceased was slain in a sudden quarrel and hot blood, without previous malice, the prisoner would only be guilty of manslaughter, though they should believe that he killed the deceased.

4th. That if the jury believe that the prisoner killed the deceased, and that he intended to strike Redman, and not the deceased; if the assault upon Redman had been only manslaughter had he killed Redman, then it would be manslaughter as to the killing of the deceased.

5th. That if the jury believe that the prisoner threw the rock that killed the deceased, and only intended to frighten or punish Redman, and did not intend to kill him, or do him great bodily harm, and the missile thrown was not a deadly weapon, then the prisoner would only be guilty of manslaughter.

6th That a weapon might be a deadly weapon, when used on a small or feeble man, that would not be a deadly weapon when used on a large or powerful man.

The Court declined to give these special instructions, except so far as they are contained in his charge to the jury. The charge of the Court was given at considerable length.

The first instruction asked by the prisoner, was substantially given by the Court as follows: "Has the State satisfied you beyond a reasonable doubt, that the deceased's death was caused by a wound received on the night of the 4th of November, 1884, as charged in the indictment, and that the prisoner at the bar threw a rock or other missile which inflicted the wound? If

the State has failed to satisfy you of either of these facts, then it is your duty to acquit the prisoner.

The Court declined to give the second instruction asked, and charged the jury upon that point, " that a rock weighing one and a half pounds, if thrown by the prisoner, is a deadly weapon."

The Court gave the third instruction asked, almost in the very language of the instruction as prayed for.

In lieu of the fourth instruction asked, the Court charged the jury: "If the State has fully satisfied you, that the prisoner got a rock weighing one pound, or a pound and a half, with the intention of throwing it at Thomas Redman, with the intent to kill him, or do him some great bodily harm; concealed himself and threw the rock at Redman, with the intent to kill him or do him some great bodily harm, and missed Redman and hit the deceased, and thereby killed him, it would be murder, and it would be your duty to convict."

The fifth instruction asked, was given by the Court in the very language of the instruction as prayed.

The sixth instruction was refused, and instead thereof the Court charged: "If the State has fully satisfied you, that the prisoner threw a flint rock, weighing a pound and a half, or two pounds, (which the Court charged you was a deadly weapon,) at Thomas Redman, or at deceased, or at any one standing in the crowd with the deceased, or at the crowd, at a distance of twenty steps or less, and thereby killed the deceased, it would be murder, unless there were circumstances of mitigation, extenuation or excuse, and if there were such circumstances, the burden would be on the defendant to establish them to the satisfaction of the jury.

The Court concluded its charge as follows: "The jury can render one of three verdicts in this case. If the State has failed to satisfy you beyond a reasonable doubt, either that the deceased died from the wound inflicted on the night of November 4th, 1884 ; or, if the State has failed to satisfy you beyond a reason-

able doubt, that the prisoner threw the rock, or other missile, which inflicted the wound, it is your duty to acquit the prisoner; and if the State has satisfied you beyond a reasonable doubt that the prisoner threw the rock, or other missile, which inflicted the wound of which the deceased died, it is your duty to convict him, either of murder or manslaughter, as you may find under the instructions already given."

The prisoner excepted to the refusal of the Court to give the special instructions asked, and to the charge as given. The jury rendered a verdict of guilty. There was a motion for a new trial, upon the ground of the exceptions heretofore taken, and upon the further ground, that the Solicitor had abused the privilege of an attorney, in his address to the jury—the objectionable portions of which are set out at great length in the statement of the case.

*Attorney-General*, for the State.
*Mr. R. F. Armfield*, for the defendant.

ASHE, J., (after stating the facts). The first exception taken by the prisoner, was to the ruling of the Court in disallowing his challenge to the array. But there was no error in that—for a challenge to the array can only be taken when there is partiality or misconduct in the Sheriff, or some irregularity in making out the list. Wharton's Am. Cr. L., §2946. There was here no default in the Sheriff. One of the persons named as jurors could not be summoned, because he was dead, and the other three could not be summoned, because they could not be found. The Sheriff returned these facts. What more could he do?

The second exception was to the Court's overruling the prisoner's exception to the admission of the testimony of Dr. White, as an expert, and this exception is put wholly on the ground that he had not been examined by the State Board of Examiners. This is a virtual admission of his competency, except for that.

On his preliminary examination, he clearly qualified himself to testify as an expert, under the rules laid down by this Court in several cases, notably in *State* v. *Sheets*, 89 N. C., 543; *State* v. *Cole*, at this Term: and we know of no rule of evidence or of law, that would exclude his testimony, because he had not been examined by the Examining Board, when he has shown himself to be otherwise qualified.

The third exception was to the ruling out of what Mrs. Mayberry said to her husband, about some one being killed. There was no error in that. In her examination in chief, she had stated that she heard some quarreling, and something that sounded like two licks, but said nothing about any one being killed, and on re-direct examination, she was asked, after objection by the Solicitor, if she had made the same statement to anybody else, and she said she had told it to her husband, and told him that *she thought some one had been killed.* This was properly ruled out, because she had made no such statement on her examination in chief. It did not amount to anything in any view of the case. What she thought, could not possibly have affected the minds of the jury in the least, and it is always better to rule such immaterial questions in favor of the defendant in criminal actions. To do otherwise, only gives the defendant grounds of appeal, and often has no other effect than to delay and obstruct the course of justice.

The fourth exception was to the refusal of the Court to give the special instructions asked. We are unable to discover any error in the rulings of the Court upon the instructions prayed by the prisoner.

The first instruction was given. The second instruction was properly refused. What was the instrument used in inflicting the mortal wound, was a question for the jury, and if they should find it was such a stone as that described by the witnesses, then it was a question of law to be decided by the Court, whether it is a deadly weapon or not. *State* v. *West*, 6 Jones, 505; *State* v. *Collins*, 8 Ired., 407.

The Court gave the third instruction as prayed for.

There was no error in refusing the fourth instruction. The exception is predicated upon the assumption, that if the prisoner in throwing the rock, had killed Redman instead of Mason, it would have been only manslaughter, and consequently, if in throwing it at Redman, he struck and killed the deceased, it would still be only manslaughter.   But according to the evidence, if he had struck and killed Redman, under the circumstances of the case, it would have been murder; for there was no fact proved, that tended to excuse or mitigate the act, even if Redman had been the victim instead of the deceased.   The instruction given by the Court in reference to that exception, was without error, and well warranted by the facts of the case.

The sixth instruction asked was, "That a weapon might be a deadly weapon, when used on a small or feeble man, that would not be a deadly weapon when used on a large and powerful man."

This instruction ought not to have been given, and was properly refused, for there was no evidence to which it applied. There was no evidence that the deceased was a small or feeble man; for aught that appears, he may have been a very stout and powerful one.   The instruction involves a mere abstract proposition, which the Court is not bound to give, and in fact should not give.   *State* v. *Martin,* 2 Ired., 101; *Walker* v. *Baxter,* 1 Ired., 203.

It was further contended by the prisoner's counsel, that there was error in that part of the charge of the Court, in which it was said: "If the State has fully satisfied you, that the prisoner at the bar threw a rock, weighing one pound, or one pound and a half, or *other missile,* intending to do great bodily harm to Thomas Redman or to the deceased, and the deceased was stricken with the rock or other missile, and was thereby killed, he would be guilty of murder, though he did not intend to kill either."   It was insisted that it should have been left to the jury to determine whether the wound given the deceased was

inflicted with a rock or other missile, and if with some other missile, whether it was clearly calculated to do great bodily harm, for the counsel contended, that if inflicted with a missile not calculated to kill, or do great bodily harm, it could not, upon the authorities cited by him, be murder, although there was no provocation. But we are of the opinion, that the facts of this case, do not warrant the application of the principal. Upon the authority of *State* v. *Gould*, 90 N. C., 658, and the authorities there cited, it could make no difference whether the mortal wound was inflicted with a rock, as charged in the indictment, or with "some other instrument of the same nature and character, when the method of the operation is the same." Whatever was the instrument used in this case, it was one thrown at the deceased, and was of such a deadly character as to break his skull and cause his death. It must necessarily have been of such a nature as to be a deadly weapon, or one calculated to do great bodily harm. But there was no evidence in the case, tending to show that the missile thrown was one of a nature not calculated to produce death or great bodily harm. All the evidence in the case pointed directly to the rock, weighing from one pound, to a pound and a half, with which the deceased was stricken, and the jury were well warranted by the evidence, in finding that the deceased was stricken with the rock, which caused his death, and that being so, the Court committed no error in charging them, that under such circumstances, the prisoner was guilty of murder.

The last exception taken by the prisoner, to the *abuse of privilege* by the Solicitor in his argument to the jury, was only taken after verdict, and it has been repeatedly decided by this Court, that such an exception, taken after verdict, is too late, and cannot be sustained." *State* v. *Suggs*, 89 N. C., 531; *Horah* v. *Knox*, 87 N. C., 483.

There is no error. Let this be certified to the Superior Court of Iredell county, that the case may be proceeded with in conformity to this opinion, and the law of the land.

No error. Affirmed.