## STATE v. JOHN S. McMAHAN.

*Officer; One Acting as Such Presumed to be—Murder.*

1. That one acted as a public officer, and was known as such, is *prima facie* evidence of his official character; he is presumed to have been duly qualified, without producing his commission or appointment.

2. The law confers on an officer charged with executing a process all the powers necessary for the purpose, and he is to judge what is necessary.

3. Where an officer had a warrant to arrest a man, and he thought it necessary to disarm the prisoner, and called upon a bystander to assist in disarming him, and thereupon the prisoner drew a pistol and killed such bystander: *Held*, to be a case of murder.

The prisoner was INDICTED for the murder of one Emilis O. Buchanan, in the county of Jackson, and the cause, upon motion of the prisoner, was removed, for trial, to the Superior Court of the county of MACON, and tried before *Boykin, J.*, at Fall Term, 1888, of said Court.

The following is the statement of the case on appeal:

"It was admitted by the prisoner that Buchanan's death resulted from a pistol shot wound, inflicted by him. One Lackey had in his hands two certain warrants, charging certain misdemeanors, and commanding him to arrest and hold the prisoner, McMahan, to answer before a Justice of the Peace for the commission of certain alleged offences. The said Lackey had acted as constable for six or eight years, there being no other constable in that township, and had arrested the prisoner several times on other occasions; the prisoner had never disputed his authority to arrest him and carry him before the Court. Lackey had been regularly elected constable for the time above mentioned. He was duly elected at the election preceding the shooting. Then, he had filed his bond before the Clerk of the Supe-

rior Court, as he testified, and the oath of office was admin-
istered by him.   Before, at the other times of his supposed
induction into office, he had qualified before a Justice of the
Peace.   He had arrested the prisoner about two weeks before
the shooting.   The prisoner knew that Lackey had acted as
constable for a long time.

"At the time of the arrest upon the two warrants above
mentioned, the prisoner did not question his authority, but
submitted and acknowledged himself a prisoner immedi-
ately after said arrest.   The said Lackey was informed that
the prisoner McMahan was armed with a pistol.   He in-
quired if this was true.   Prisoner responded, ' No.' Lackey
said that he had been credibly informed that he, the pris-
oner, did have a pistol concealed in his hip pocket.   The
prisoner reiterated his denial. Lackey responded that under
the circumstances he considered it his duty to search and
disarm him, if he was so armed.   The prisoner arose from
his chair (the parties being at the time on the porch of a
certain house), placed his chair between him and Lackey,
and proceeded to walk off backwards towards the balustrade
of the porch.   The said Lackey ordered him to halt, and
started in pursuit.   The prisoner continued to walk towards
the railing.   Just as he had placed one leg over the railing
and was in the act of raising the other, Lackey seized him
and called on the deceased Buchanan to assist him.   Buch-
anan was then standing in the porch.   He approached and
seized the prisoner by the arm.   The prisoner immediately
drew his pistol and shot the deceased.

The prisoner requested the Court to charge the jury that
Lackey was not a lawful officer and was not authorized to make
the arrest of the prisoner, and that the deceased was in no better
position than Lackey in respect of seizing and undertaking to
disarm the prisoner, and in no view of the case could the pris-
oner be convicted of murder. The Court declined both requests,
and instructed the jury that, if they believed the evidence,

Lackey was an acting officer, authorized to execute the war-rants referred to, and that the deceased was required to respond to his demand for assistance, and was entitled to the same protection and immunity with which Lackey was invested; also, that Lackey was authorized to prevent the escape of the prisoner after his arrest; that he was clothed with the power to require the assistance of the deceased; that if prudence dictated it, he had the legal power to dis-arm the prisoner, without exercise of unnecessary force, and that the officer was constituted the judge of the necessity of disarming the prisoner, and that his action in this respect would be upheld by the law, unless he acted arbitrarily and oppressively. There was a verdict of guilty, judgment, and appeal."

*The Attorney General*, for the State.

*Messrs. K. Elias, Jno. Devereux, Jr.*, and *W. W. Jones*, for the defendant.

DAVIS, J. (after stating the case). Two exceptions appear in the record.

The first is to the refusal to instruct the jury that Lackey was not a lawful officer, was not authorized to make the arrest, and that the deceased was in no better position than Lackey, and in no event could the prisoner be convicted of murder.

The second, to the refusal to instruct the jury that neither Lackey nor the deceased, under the circumstances, had any authority to disarm the prisoner.

The two exceptions may be considered together. We think it sufficiently appeared that Lackey was an officer, duly quali-fied; but, whether this be so or not, he was known to be acting as such, and " evidence that a person acted as a pub-lic officer, and that he was known as such, is *prima facie* evidence of his official character, without producing his com-

mission or appointment. Such an officer is presumed to have been duly qualified, and this whether in a civil or criminal action." *Tatem* v. *White,* 95 N. C., 453; *State* v. *Speaks,* 94 N. C., 865; *State* v. *McIntyre,* 3 Ired., 171; *State* v. *Curtis,* 1 Haywood, 471.

The law confers upon an officer, charged with the execution of process, all the powers necessary for the effectual execution of such process, and the officer must be the judge as to what is necessary. *State.* v. *Stalcup,* 2 Ired., 50; *State* v. *McNinch,* 90 N. C., 695, and cases there cited. Of course he must act in good faith, and cannot, under the pretence of duty and necessity, gratify his malice or exercise wanton and unnecessary severity. *State* v. *Stalcup, supra; State* v. *Bland,* 97 N. C., 438; *Braddy* v. *Hodges,* 99 N. C., 319. It is the duty of those present, when necessary and called upon, to aid the officer, and the protection extended to the officer extends to persons so aiding. *The Code,* § 1125; *State* v. *James,* 80 N. C., 370. A simple reference to the facts will show that the prisoner should have been disarmed, and it was his ill-fortune, as well as that of the deceased, that he was not disarmed before the fatal shot. There was no error in the ruling of his Honor.

No error.                                        Affirmed.