### . STATE OF NORTH CAROLINA v. GOSNELL.

(Circuit Court, W. D. North Carolina.   June 6, 1896.)

1. FEDERAL COURTS—FOLLOWING STATE DECISIONS—CRIMINAL LAW.
    When an indictment found in a court of a state in which the offense is defined by statute is removed to a federal court for trial, the latter court must be controlled by the interpretation given to such statute by the highest court of the state.

2. CRIMINAL LAW—MURDER IN THE FIRST DEGREE—NORTH CAROLINA STATUTE.
    Under the statute of North Carolina, murder in the first degree is confined to homicide committed by poison, lying in wait, or while perpetrating a felony, and cases where it is conclusively shown that the act was prompted by deliberate purpose and premeditated malice and design. The use of a deadly weapon only raises a presumption of malice, not of premeditation and design, which must be shown beyond a reasonable doubt.

3. SAME—MURDER IN THE SECOND DEGREE.
    Under the statute of North Carolina, a homicide committed with malice, express or implied, without premeditation, is murder in the second degree, unless shown by the defendant to have been done under legal provocation reducing the homicide to the degree of manslaughter.

4. SAME—PROVOCATION—REDUCING DEGREE OF CRIME.
    Words or conduct which are not legal provocation, but which are well calculated to arouse, and do arouse, sudden passion, will modify a homicide to murder in the second degree.

5. SAME—PREVIOUS THREATS.
    Where the evidence shows previous threats or malevolent conduct of a defendant charged with murder, towards the deceased, the jury must consider carefully all the attendant facts and circumstances, to see whether such threats were called forth by sudden and temporary passion, aroused by some immediate provocation, or by an antecedent, fixed purpose to kill at a future time.

6. SAME—JUSTIFIABLE HOMICIDE—OFFICER OF THE LAW.
    Where an officer has legal authority to arrest, and, while using proper means, is resisted, he may repel force with force, and need not give back an inch, though he must not use excessive violence, beyond the emergencies of the occasion; and, if the person resisting is necessarily killed in the struggle, the homicide is justifiable.

7. SAME—MALICE.
    When an officer invested with the authority and duty to arrest an offender is rightfully proceeding in the line of his duty, and is resisted, and the death of his assailant is the result of the encounter, the fact that the officer entertained ill feeling or malice towards his assailant is not sufficient evidence of premeditated malice, in determining the degree of the homicide.

8. SAME—SHOWING WARRANT.
    A known officer, having legal authority to arrest, who is resisted in making an arrest, need not show or read the warrant before the arrest is secured.

9. SAME—ASSISTANT OF OFFICER.
    Duly-summoned assistants of an officer are under the same protection of the law which is afforded to the officer who has process in his hands.

10. SAME—DEADLY WEAPON.
    If a person for whom an officer holds a warrant of arrest uses a rock in close conflict with the officer, in resisting arrest, and wounds him, such rock is a deadly weapon; and if such person has another rock in his hands, and manifests a purpose to throw it, he is in a condition of deadly resistance, and the officer is justified in shooting him to prevent imminent danger and serious injury.

11. SAME—EVIDENCE—DECLARATION OF PRISONER.
When declarations of a prisoner are relied on by the prosecution to show a homicide, they are available to the prisoner to prove the manner of the killing and the motive prompting it, and are as protective to him as if he had shown by independent testimony such explanatory and mitigating facts and circumstances.

12. SAME—JURY—REACHING VERDICT.
Though not a rule of law, it is a reasonable and moral duty of a small minority of a jury, who are in favor of conviction in a capital case, to yield their views, and concur with a decided majority in favor of acquittal on the ground of a reasonable doubt of guilt; but the converse does not apply to a small minority in favor of acquittal.

13. SAME—REASONABLE DOUBT.
Distinction between "a presumption of innocence" and "a reasonable doubt" stated by court.

Gudger, Pritchard & Rollins, for the state.
R. M. Glenn and W. W. Zachary, for defendant.

DICK, District Judge (charging jury). The defendant is charged with the murder of Peter Southerland, by an indictment found by a grand jury in the state court, and removed, under the provisions of an act of congress, to this court for trial. This court has no original jurisdiction of the offense charged, but the case must be tried in the same manner of procedure as cases originating in this court are tried. The law that defines the offense alleged is the criminal law that prevails in this state. The crime of murder is defined by statute in this state, and this court must be controlled by the interpretation of such statute made by the supreme court of this state, and must not extend or restrict such construction by implication. Act Feb. 11, 1893, c. 85. A state statute also declares that the common law, with certain specified limitations, shall be in full force in this state; and the supreme court, in numerous decisions, has determined how far the common law is applicable in particular cases. At common law, when a homicide was admitted or proved to have been committed with a deadly weapon, the law raised the presumption that the act was done with malice aforethought; and the burden of proof was on the defendant to rebut this strict, technical presumption of law to the satisfaction of the jury, but not beyond a reasonable doubt. State v. Willis, 63 N. C. 26; State v. Brittain, 89 N. C. 481; State v. Carland, 90 N. C. 668. The records of the criminal courts showed numerous cases of homicide where killing was done under sudden excitement caused by facts and circumstances that were not such legal provocation as would mitigate the homicide to manslaughter, and yet were well calculated to temporarily arouse the angry feelings and deadly passion of the slayer, yielding to the infirmities of human nature. The manifest intention of the legislature in carefully framing and enacting this statute making a distinction between murder in the first and second degrees was to mitigate the stern, inflexible, and bloody rule of the common law so as to meet the requirements of enlightened, humane, and Christian public sentiment in favor of human life and liberty. The application of the evidence in each particular case to the letter and spirit of this new rule of the law is wisely and imperatively entrusted to the intelli-

gence, common sense, honest purpose, and impartial determination of juries, who, by long experience and observation, have become capable of judging of the impulses, motives, and designs of human conduct, and who will be guided in their deliberations by the advice and instruction of learned, upright, and humane judges, familiar with the application of rules of evidence in legal trials, and the construction and interpretation of statutes in the administration of justice. Several homicide cases in which the construction of the provisions of the act of 1893 was involved have recently been before the supreme court of this state, and well-considered and instructive opinions were delivered by that eminent court. In preparing this charge I have endeavored to be guided by such decisions cited in the argument, and references to such cases, and other cases found on investigation, will be inserted in the charge, before filed in clerk's office. State v. Fuller, 114 N. C. 885, 19 S. E. 797; State v. Norwood, 115 N. C. 789, 20 S. E. 712; State v. McDaniel, 115 N. C. 807, 20 S. E. 622; State v. McCormac, 116 N. C. 1033, 21 S. E. 693; State v. Gadberry, 117 N. C. 811, 23 S. E. 477.

Murder in the first degree is now confined to homicides committed by poison, by lying in wait, or while perpetrating arson, robbery, rape, or any other felony, and to cases where it is conclusively shown that the act was prompted by deliberate purpose, and premeditated malice and design. The use of a deadly weapon only raises a presumption of malice, and not premeditation and design. The elements of premeditation must be shown in evidence by the prosecution beyond a reasonable doubt. The strict, technical rule of the common law no longer exists in this state. The difference between express and implied malice is not in kind, but only in degree. Evidence of express malice tends to show a fixed and premeditated purpose, while implied malice raises no such presumption as to murder in the first degree. Such homicidal purpose can only be shown by clear and conclusive evidence. It must be more than intentional and willful. It must be deliberate and premeditated, and prompted by hatred, or some diabolical impulse of a heart regardless of human duty, and fatally bent on mischief. If a homicide is committed with malice, express or implied, but is not prompted by premeditation, then it will be murder in the second degree; and the defendant must rebut this presumption by proof showing that the act was done under legal provocation, or under such facts and circumstances as in law justified the action. Legal provocation reduces homicide to the degree of manslaughter. Words or conduct which are not legal provocation, but which are well calculated to arouse, and do arouse, sudden passion, will modify a homicide to murder in the second degree. Where the evidence shows previous threats or malevolent conduct of defendant towards deceased, which are insisted upon by the prosecution as evidence of express malice, the jury must consider carefully all of the attendant facts and circumstances of the occasion, to see whether such threats were called forth by sudden and temporary passion aroused by some immediate provocation, or by an antecedent, fixed purpose to kill at a future time. There is a clear difference in degree as to the weight of evidence tending

to show the nature and extent of express malice.    Antecedent threats, made upon some immediate provocation and in hasty passion, are not so heinous as hostile expressions showing a cool, persistent, and deadly purpose, subsequently manifested by plans and movements of deliberate and malevolent design.    The jury should carefully consider such distinctions, and make just discriminations, as human experience has shown that threats are often made, under temporary excitement, without any purpose of ever carrying them into fatal execution.    State v. Horn, 116 N. C. 1037, 21 S. E. 694. The jury should also consider the bearing of the proximate cause of the homicide, to see whether there was present any reasonable motive and cause, other than the previously expressed malice, that directly induced the homicide; as whether the defendant acted under sudden provocation or in self-defense, or in the proper execution of some lawful duty.    When the facts proximately connected with the transaction show a legitimate motive and proper purpose as the immediate cause of the act done, the law will assign the deed to such purpose and motive, and will not readily admit that the homicide was the consequence of any preconceived malice.    To do away with the force and effect of the immediate motive and provocation, it must clearly appear in evidence that a particular and definite intent to kill had been deliberately formed, and existed before and independently of the immediate provocation.    The intent is not deliberate if there was a sufficient immediate impelling or provoking cause.

When an officer of the law is invested with the authority and duty to arrest an offender, and is rightfully proceeding in the line of his duty, and is resisted or assailed by the person whom he is authorized to arrest, and the death of the assailant is the result of the encounter, the fact that the officer entertained ill feeling or malice towards the assailant is not to be regarded as sufficient evidence of premeditated malice, in determining the degree of the homicide.

As the evidence in this case tends to show that elements of manslaughter and of excusable and justifiable homicide are involved, and the legal principles and doctrines relating to such offenses have been discussed in arguments of counsel, I will briefly express my views of the law:

Definitions of the various degrees of homicide have often been given by text writers, and in reports of judicial opinions; but as the killing of a human being is such a serious offense against the peace, security, and welfare of society, I think that in every trial a judge, in his charge to a jury, should restate definitions and the principles of law applicable to the facts disclosed by the evidence, so that such vitally important knowledge may become clear and familiar to the general public mind.    Manslaughter is the willful and unlawful killing of a human being without malice, express or implied.    It usually occurs on legal provocation, or in sudden fight, in the heat of passion aroused by an immediate cause; or where an officer employs greatly excessive force in the execution of legal authority or process.    It may also occur when the slayer is engaged in an unlawful act, which is not a felony, and not likely to endanger human life; or gross negligence occurs in the performance of a

legal act; or by neglect to perform an act required by law.    Clark, Cr. Law, 165-172.    Where an officer has legal authority to arrest, and, while using proper means, is resisted, he may repel force with force, and need not give back an inch; but he must not use excessive violence, far beyond the emergencies of the occasion.    The law commands its officers to execute its mandates; to secure the alleged offender without fail, and at any reasonable hazard,—and, if the person making resistance is necessarily killed in the struggle, the homicide is justifiable.    This same principle of law is applicable to persons who are not officers, under certain facts and circumstances.    When a person, being without fault, and in a situation where he has a right to be, is violently assailed with a deadly weapon, and has reasonable grounds to believe, and in good faith believes, that he is in serious danger, then he need not make any retreat to avoid impending results, but may at once repel force with force, in the reasonable exercise of his right of self-defense, and if his assailant is killed the homicide is justifiable.    Starr v. U. S., 153 U. S. 614, 14 Sup. Ct. 919; Beard v. U. S., 158 U. S. 550, 15 Sup. Ct. 962.    The doctrine of excusable homicide is only applicable when the slayer has been guilty of some fault in bringing on the fight, and has used all reasonable efforts within his power to avoid fatal results.    An officer, in attempting to arrest a person charged with a misdemeanor, is not justified in shooting him, when trying to avoid arrest by flight.    The officer is in no personal danger, and the offender may be arrested at another time.    But when such offender resists arrest the officer may use sufficient force to overcome resistance, and if the resistance is with a deadly or dangerous weapon the officer may resort to extreme measures to avoid serious injury and accomplish the arrest.    He is never required, under such circumstances, to afford the resisting offender the opportunities of a fair and equal struggle, but may avail himself of any advantages that arise in the conflict.    If he is a known officer, and has legal authority to arrest, and resistance is made, he is not bound to show or read the warrant before arrest is secured.    Starr v. U. S., supra; State v. McMahan, 103 N. C. 379, 9 S. E. 489; State v. Garrett, Winst. Eq. 144; U. S. v. Rice, 12 Myers Fed. Dec. § 636, Fed. Cas. No. 16,153.

The defendant in this case places his defense upon the ground that at the time the homicide was committed he was a duly-summoned assistant of a regular officer of the United States, who had legal process in his hands commanding him to arrest the deceased for a crime against the United States; that deceased refused to submit to arrest, and manifested a purpose to resist with a deadly weapon, and with dangerous violence.    Duly-summoned assistants of an officer are under the same protection of the law which is afforded to the officer who has process in his hands.    Both judicial and ministerial officers, in the execution of the duties of their office, are under the strong protection of the law; and their legally summoned assistants, for such time as in service, are officers of the law.    If the regular officer has process in his hands, the assistant can act under the authority and protection of such process, and may comply with the orders and requirements of his superior officer; and if resistance is

made to his performance of such legal duty he may, even during the temporary absence of the officer with process in his hands, resort to such extreme measures as may be necessary for his self-protection and the arrest of the defendant. State v. McMahan, supra. The law of the land that regulates human conduct so as to secure social order and the blessings of civil liberty must be supreme in the sphere of its operation. The officers who are authorized and required to execute its mandates must receive its most ample protection for acts done in the rightful performance of the imperative duties imposed. This rule of law is absolutely necessary for the administration of justice, and is founded in wisdom and equity, and in the fundamental principles of social order and political government. If unnecessary and excessive force and violence is used by an officer in attempting an arrest, after resistance had entirely ceased, and a willingness to submit to arrest had been manifested, then if the party is killed the officer would at least be guilty of manslaughter; and, if blood had had time to cool, murder in the second degree; and, if the officer was prompted by preconceived and deliberate malice, murder in the first degree. U. S. v. Rice, supra; State v. Sigman, 106 N. C. 728, 11 S. E. 520, and cases cited.

Gentlemen of the jury, I have now briefly stated the principles of law involved in this case, and it is your duty to apply them to the evidence before you. I have a legal right to express my opinion on the weight of the evidence, but I will try not to do so, as I wish to act in conformity with the laws of this state on the subject. Starr v. U. S., supra. From what I may say in stating the evidence, you may deduce inferences as to my opinion; but you must not be governed by such inferences, as the law imposes upon you the responsibility and duty of determining issues of fact from the evidence.

The prosecution insists that the evidence shows such express malice on the part of the prisoner as will warrant you in finding preconceived malice and deliberate design as the direct prompting motive and cause of the homicide, and therefore will authorize you to return a verdict for murder in the first degree. The evidence shows that two or three weeks previous to the homicide the prisoner spoke in very harsh terms about deceased, for letting down the bars that led into his cultivated field, and also for stealing fodder. There is no evidence of any declared purpose to kill the deceased for these private wrongs, and it is for you to consider whether such alleged wrongs were well calculated to call forth hasty expressions of angry abuse and dissatisfaction, or whether such expressions showed a deliberate purpose to kill, when no such purpose was expressed. The evidence further shows that at another time the prisoner said that he "would no more mind killing the old devil than he would an old dog." These expressions were made in a conversation about arresting deceased under authority from Deputy Marshal Woody. He said at the time that if so authorized he would make the arrest, and carry him to Marshall, and would kill deceased if he resisted or attempted to escape. He was aware that there was a probability of resistance or attempted escape, as the deceased had a few days before resisted

Deputy Marshal Woody, made escape, and declared that he would not submit to an arrest.

As circumstantial evidence as to the homicide is relied upon by the prosecution, evidence was admitted as to the declarations of deceased, and as to his character for lawless violence and desperation in resisting the officers of the law.    State v. Turpin, 77 N. C. 473.

Another theory of the prosecution is derived from the evidence that the body of the deceased was found "in a sink in the earth," in such position as to indicate that he made no resistance, and shots were found in the ground beneath his body; that deceased was seriously afflicted with hernia, and at the time of killing he was engaged in relieving himself from suffering by adjusting a truss over his protruded bowels.    If this theory is correct, I charge you that the homicide was a cowardly act, and at least murder in the second degree, as the deceased was in a helpless condition, was making no resistance, and was incapable of resistance.    The shots in the ground under the body of deceased were not found until several days after the homicide, and the evidence seems to have the appearance of being the result of an afterthought and preparation on the part of one of the witnesses for the prosecution, and a frequent companion and near relative of the deceased.    This theory of the prosecution is founded upon circumstantial evidence, and is directly controverted by other evidence offered by the prosecution showing that a very short time before the homicide the deceased was fleeing, and the officers were in active and close pursuit, and deceased was overtaken by reason of his inability to cross a swollen creek before him.    The evidence shows that Woody was a known deputy marshal; had legal process in his hands a few days before the homicide, and read the same to deceased at his request; that an arrest was attempted, was violently resisted, an escape was effected, and deceased declared that he would not be arrested by a Rebel.    The evidence further shows that the prisoner was subsequently summoned by Woody as an assistant in making an arrest, and was with him in making search, and pursuit of the deceased which resulted in the homicide.    The declarations of the prisoner as to the manner of the occurrence were called out by the state; are uncontroverted; are sustained by other corroborating state's evidence showing the fact that soon after the homicide the prisoner exhibited a painful and bleeding wound that he said he had received in the fatal conflict.    These declarations are the only direct evidence as to the manner in which the homicide was committed, and counsel of defense insist that, sustained and corroborated as they are by other evidence, they are amply sufficient to show that the homicide was justifiable, and warrant a verdict of not guilty.

If you are satisfied that the deceased used a rock, in close conflict, and wounded the prisoner, then I charge you that it was a deadly weapon; and if deceased had another rock in his hand, and manifested a purpose to throw the same, he was in a condition of deadly resistance, and the prisoner was justified in shooting him to prevent imminent danger and serious injury.    Cases cited supra.

At common law, ministerial officers had the right to summon the posse comitatus to their assistance in preserving the peace and security of society, and in pursuing and arresting offenders, and persons summoned were bound to obey. Rev. St. U. S. §§ 787, 788, expressly invest marshals with power to summon assistance in the execution of process, and confers upon them and their deputies the same powers that are given by law to sheriffs and their deputies. A summoned assistant of the marshal is under the protection of the law, and represents, to some extent, the sovereignty of the United States. The testimony of Ada Presly shows that Woody was a deputy marshal; had process in his hands, which he read to defendant; and had attempted an arrest, which was unsuccessful, by reason of resistance of deceased; that the prisoner and Woody were at her house a short time before the homicide, seeking to make an arrest; that they found the deceased in the woods, close by, and commenced pursuit. This evidence shows that the prisoner was acting as assistant to Woody, with his approval. When a person acts in a public capacity, as an officer of the law, it will be presumed that he was rightfully appointed.

Upon careful consideration of all the evidence, I charge you that there is not sufficient evidence to warrant you in rendering a verdict for murder in the first degree. I have no right to control your judgment in determining issues of fact, but I can set aside your verdict and grant a new trial if I have a clear opinion that the verdict is not sustained by the evidence.

There is some evidence as to murder in the second degree, as there is a presumption of malice raised by the law from the use of a deadly weapon. It is for you to determine whether the evidence has removed that presumption by showing that the homicide was committed in a sudden fight, while attempting to make an arrest which was resisted by the deceased with dangerous violence and a deadly weapon. If the evidence of the state shows that the prisoner was lawfully acting as assistant to the deputy marshal, then there was no necessity for the prisoner to prove such fact by evidence introduced by him. As the declarations of the prisoner are relied upon by the state to show the homicide, they are available to the prisoner to prove the manner of the killing and the motive that prompted the act, and are as protective to prisoner as if he had shown by independent testimony such explanatory and mitigating facts and circumstances. State v. Brittain, 89 N. C. 481; State v. Thomas, 98 N. C. 599, 4 S. E. 518.

Upon the conclusion of the evidence on the part of the state, the counsel of the prisoner were of opinion that the state had not offered evidence sufficient to warrant a conviction, and therefore declined to offer evidence in explanation and defense. In cases of homicide, where the prisoner offers no evidence and sets up no separate defense, but relies upon the evidence of the prosecution for justification and acquittal, and such evidence shows a voluntary killing, and at the same time the facts and circumstances attending the transaction affording proof of justification and excuse, and there is no contradictory testimony, the prisoner may rightfully insist that

the facts and circumstances arising out of the evidence of the prosecution should be sufficient to satisfy the jury that the homicide was not unlawful and unjustifiable.

Take the case, and determine the issues before you,—as to whether the prisoner is guilty of murder in the second degree; or of manslaughter, for using unnecessary and excessive force in the execution of legal process; or whether he was justified in committing the homicide, in properly attempting the discharge of his official duty.

After deliberating five hours the jury returned into court, and reported that they had not agreed upon a verdict, and probably could not agree after further consideration, whereupon the judge, in the presence of the prisoner and the counsel on both sides, delivered the following instructions:

Gentlemen of the Jury: You must agree. In the trial of a capital felony, I have no discretion to discharge you without further prolonged effort to find a verdict. The expiration of this term of court is not definitely fixed by law, and I feel it to be my duty to keep the court open another day, and then adjourn the term to Greensboro, as the circuit court is always kept open from term to term at that place. You will be carried to that place, under the care of the marshal, and be kept together until you do agree upon a verdict. Heretofore, during this trial, the marshal, under an order of court, has furnished you food and lodging at the expense of the government. That order is now set aside. You will be confined to this court room, and an additional bailiff will be appointed to furnish you food at your own expense. As you are entitled to fees as jurors, you will have no difficulty in obtaining proper nourishment. I do not know how you are divided in opinion, but I deem it proper to say, by way of advice, that a distinguished judge of the state supreme court once said that a trial judge in a capital case would not commit error in expressing an advisory opinion to a jury, that, where a large majority were in favor of acquittal, it was a reasonable and moral duty of a small minority in favor of conviction to yield their views and concur with a decided majority of their fellow jurors on the ground of a reasonable doubt of guilt. This is not a rule of law, but it is a wise suggestion in accordance with reason and the humane spirit of the law. This advice of concession would not be applicable where a large majority are in favor of conviction, and a small minority in favor of acquittal. The law and the spirit of trial by jury require the concurrence of the entire jury as to the guilt of the prisoner beyond a reasonable doubt before a verdict of guilty can be properly rendered. Each juror is responsible for his own action, and will not lawfully or morally discharge his solemn duty if he concurs in the conviction of a fellow man when the evidence does not satisfy his mind of the guilt of the accused beyond a reasonable doubt. In my former charge I did not call your attention to the force, effect, and application of the legal presumption of innocence in a favor of a defendant that arises on the trial of every criminal case. This legal presumption of innocence is to be re-

garded by the jury, in every case, as matter of evidence, to the benefit of which the defendant is entitled until overthrown by contrary evidence satisfactory beyond a reasonable doubt. This presumption is very important in cases where the guilt of a party is dependent upon a presumption of law, or where there are doubts arising from insufficient, inconsistent, or conflicting evidence. Where, from a consideration of the entire evidence, a case is left doubtful in the minds of a jury, or a decided majority of a jury, this presumption of innocence should always be sufficient to turn the scale in favor of defendant. In this case, the voluntary killing of the deceased with a deadly weapon having been shown by the declarations of the prisoner, the law raised a presumption that the act was done with malice; and the burden was on the defendant to rebut such presumption to the satisfaction of a jury, but not beyond a reasonable doubt. The presumption of innocence is a counter presumption, not sufficient of itself to rebut the presumption of malice; but it should have much weight, as the evidence tends to show, from facts and circumstances, that the killing was not done with malice, but was done in self-defense, when engaged in the execution of legal process, and to avoid serious injury, from a violent assault made by deceased with a deadly weapon while resisting an arrest. In the recent case of Coffin v. U. S., 156 U. S. 432, 15 Sup. Ct. 394, the supreme court of the United States carefully considered the force, effect, and application of the presumption of innocence in the trial of criminal cases. Mr. Justice White, in an elaborate, instructive, and very able opinion, delivered the unanimous decision of the court; holding that such presumption was elementary, and its enforcement lies at the foundation of the administration of our criminal law, and showing from many authorities that such presumption had long existed, and still exists, in every system of jurisprudence which has reason, religion, and humanity for a foundation. It is evidence in favor of the accused, introduced by the law in his behalf, to be considered as proof by the jury, and involves more in the trial of a case than "reasonable doubt" which is only the result of insufficient proof. You are now placed under the care of the marshal, to be kept together in this room. On to-morrow evening this term of the court will be adjourned to Greensboro, for the purpose of your deliberating until a verdict is agreed upon and rendered.

Verdict, "Not guilty."