THE STATE v. ALBERT CAMPBELL.

*Arrest—Officer—Homicide—Trespass.*

1. A private person has no authority to make an arrest for a riot, rout, affray, or other breach of the peace, without a warrant, except when such offences are being committed in his presence; nor can a Justice of the Peace confer such authority by a mere verbal order or command.

2. The authority given by section 1124 of *The Code* to private persons to make arrests without warrant only extends to the offences therein mentioned and committed under the conditions therein prescribed.

3. The power conferred upon officers by section 1125 of *The Code* to summon private persons to aid them in the execution of their duties is limited to the cases mentioned in that section, and while they are actually being perpetrated, or are imminent. It does not go to the extent of authorizing the persons thus summoned to make arrests, without warrant, where the offence has been accomplished and the offenders have dispersed.

4. The rule is otherwise as to felonies. In such cases, if the crime is committed in the presence of a private person, it is his duty to make the arrest without waiting for a warrant or summons of an officer, and if it has been committed not in his presence he may arrest without warrant.

5. The deceased had been engaged, some hours previous, in a dangerous affray, in which he had been severely wounded, and was on his way home, carrying a pistol in his hand. A Justice of the Peace commanded the prisoner to follow and arrest him. In attempting to do so, deceased resisted, displaying his pistol, when prisoner killed him: *Held*, that, as prisoner had no authority to make the arrest, he was not justified in the killing.

This was an Indictment for Murder, tried at Fall Term, 1890, of MITCHELL Superior Court, *Merrimon, J.*, presiding.

The prisoner is indicted for the murder of Wilburn Cox. Upon his arraignment he pleaded not guilty. On the trial the evidence material to be stated here was substantially as follows:

Several hours before the homicide in question the deceased and another—both of them disorderly and violent men— on one side, had engaged with several other persons on the opposing side in a dangerous affray, both sides using guns and pistols. The deceased and his associate fired their pieces repeatedly at the opposing party without effect, but the latter fired their pieces upon the former, wounding them severely, whereupon they gave way and fled, the deceased hiding himself in the woods and his associate taking refuge in a house not a great way from the scene of the affray, and there having his wounds dressed. The deceased, in the course of a few hours, left the woods, and went to the house of a person not far from that of the Justice of the Peace presently to be mentioned, and had his wounds dressed, and determined to go to his home, two or three miles distant. He was admonished not to go down the road, lest he might be killed. He swore violently that he would go down the road, saying that he. was not able to walk across the mountain. A person present consented to take him home behind him on a horse, and they presently started on the way to his home. They had gone but a short distance when they came in view of a Justice of the Peace and several other persons,

when the Justice of the Peace, without issuing a warrant, orally summoned the prisoner and others there present to go and arrest the deceased as an affrayor who was going on his way, and having on his person a pistol. The prisoner at first hesitated to go, but presently he and another followed on after the deceased and soon overtook him at a place where he had stopped and was telling a person of the affray and his wound.

The prisoner, testifying in his own behalf, among other things, said: "I went on down, kept in sight of him; sometimes he was not in sight, most of the time we were. When I overtook the deceased he was riding behind Wilson Short— was on a horse behind him. They were talking to George Brown; laid my hand on Cox and said 'Consider yourself under arrest.' He said 'Hold on,' and jumped off his horse on further side from me. As he was getting off I told him 'I was deputed as an officer by 'Squire Wise to arrest you and take you back, and you must go.' Then I walked around the horse after him, and when I got round I grabbed him by the arm, and he jerked loose from me, and I grabbed at him again, and caught him about the waist-band of his pants, and he drew his pistol with his left hand up on to his right arm bearing on me. I told him to 'stop! stop!' He walked three or four steps sidling, turning his left side to me, and then he turned with his right side and snapped his pistol straight at me. I told him to stop then again. He turned at once, and then around the other way on me again, and then I fired. When I shot, deceased had his pistol held back with his left hand pointed at me. At the time I shot, I thought and believed I was likely to be killed or suffer by his acts and conduct."

The deceased then moved off hastily a few yards, fell to the ground and at once died.

It was admitted by the prisoner that he shot and killed the deceased, and that the only authority he had to arrest

him was a verbal deputation made by a Justice of the Peace. The prisoner relied upon the statute (*The Code*, § 1125) conferring powers on Justices of the Peace and others to arrest persons violating the law, &c., &c., and asked the Court to instruct the jury "that, if they believed the evidence of the prisoner's witnesses and his own evidence, the Justice of the Peace had jurisdiction and power, under the facts and circumstances of the case, to confer upon the prisoner, by verbal deputation or order, authority to arrest the deceased, and the prisoner was warranted in using force sufficient to overcome resistance and arrest him; and that if it was necessary to kill the deceased in order to overcome such resistance and make the arrest, the prisoner was justified or excusable, and should be acquitted."

The Court refused to give such instructions, and instructed the jury "that the Justice of the Peace was not possessed of jurisdiction or power, under the facts or circumstances disclosed by the evidence, to authorize the prisoner, by verbal deputation or order, to arrest the deceased, and that in no view of the evidence for the prisoner was he justified in taking the life of the deceased."

The prisoner excepted. There was a verdict of manslaughter, and judgment against the prisoner, from which he appealed.

*The Attorney General*, for the State
*Mr. W. H. Malone*, for the defendant.

MERRIMON, C. J.—after stating the facts: The deceased was not charged, nor chargeable, so far as appears, with any felony. His participation in the affray a few hours before he was slain would render him chargeable with simply a misdemeanor. And so, also, if he and his associate disturbed the peace and quiet of the neighborhood simply by their loud and boisterous threats, cursing and disorderly

conduct, and if he had about his person a concealed weapon at the time the prisoner undertook to arrest him, he would only be chargeable with a misdemeanor.

The prisoner, a private person, had no authority to arrest the deceased for a riot, rout, affray, or other breach of the peace, without a proper warrant authorizing such arrest, directed to him as allowed by the statute (*The Code*, § 1219), unless he was present at the time of the perpetration of such offence, nor could a Justice of the Peace, by his merely verbal order or command, confer upon him such authority; nor could he have authority to arrest him for a mere misdemeanor, other than such as those just mentioned, without such warrant. The statute (*The Code*, § 1124) prescribes that " every person present at any riot, rout, affray, or other breach of the peace, shall endeavor to suppress and prevent the same, and, if necessary for that purpose, shall arrest the offenders." That is, if need be, in such case, the private person shall arrest the offenders and take them before a proper officer, to the end he may issue a proper warrant for and deal with them according to law in such cases. The purpose is to make it the positive duty of every person present at any such breaking of the peace to interpose and endeavor to suppress and prevent the same. Hence, if one make an arrest in such case in good faith, he will not be a trespasser. On the contrary, he will be encouraged and protected in the use of all proper means to suppress such breaches of the peace and in bringing the offenders before proper officers to be dealt with as the law directs.

In case of felonies, however, a private person may arrest the felon without a warrant, and it is his duty to do so if he is present at the time it is committed. In such case, he may and ought to arrest and, as soon as practicable, take him before a proper officer, to the end he may be duly held to answer for the offence. In such case, the private person would not be justified unless a felony had actually been

committed.   It is better and safer to obtain a warrant when. this may be promptly done.   *State* v. *Roane*, 2 Dev., 58; *Brockway* v. *Crawford*, 3 Jones, 433; *State* v. *Bryant*, 65 N. C., 327; *State* v. *Shelton*, 79 N. C., 605; *Neal* v. *Joyner*, 89 N. C., 287; 1 Hale P. C., 587, 588; 1 Chit. Cr. Law, 17 *et seq.;* 4 Bl. Com., 293.

It is, however, insisted, with great earnestness, that the statute (*The Code*, § 1125) conferred upon the Justice of the Peace power to summon the prisoner to arrest the deceased, as he undertook to do.   We think this contention is unfounded; that it is not warranted by a just interpretation of the statute or by the facts of the case.   The section of the statute cited provides: "Every person summoned by a Judge, Justice, Mayor, Intendant, chief officer of any incorporated town, Sheriff, Coroner or Constable, to aid in suppressing any riot, rout, unlawful assembly, affray, or other breach of the peace, or to arrest the persons engaged in the commission of such offences, or to prevent the commission of any felony or larceny which may be threatened or begun, shall do so."   This provision has reference to cases where the offences mentioned—not every misdemeanor—are actually being perpetrated—going on to completion—or where they are imminent—about to be perpetrated.   In such emergency, it is the duty of the officers specified to suppress and prevent the offences and arrest the offenders.   In so discharging such duties, they are not necessarily left alone; they may, and ought, when need be, to summon any person, whether then present or not, to aid them.   This statute makes it imperative on the person so summoned to aid, whether he be present at the perpetration of the offence when summoned, or not.   It is the duty of every person, when summoned, to aid in the restoration and preservation of the public peace, and to prevent a breach of it.   As to those persons present when such, offences are being perpetrated, it is their duty to interfere, and, if need be, without warrant, arrest the offending parties. *The Code*, § 1124.

But it is not part of the purpose of the section of the statute above recited to confer upon the officers therein specified authority to summon and empower private persons, after the offences mentioned have been committed and the offenders have dispersed and gone away, to go after and arrest them without warrant. The statute does not so provide in terms, nor is there anything in it that can bear such interpretation. Such exercise of power does not at all come within its purpose, nor is there any reason why it should.

After the offence, the emergency requiring such prompt and summary action, had passed by, the Justice of the Peace or other proper officer should, upon appropriate affidavit, issue a State warrant for the offenders, directed to the Sheriff or other appropriate officer, or, if none can be conveniently found, then to *a private person*, who would, in that case, thus be fully empowered to make the arrest, giving notice of the warrant and his authority. The private person would thus have like authority with the Sheriff for the specified purpose, and he might, in case of resistance by the person to be arrested, use such force as would be necessary to make the arrest, but in case the latter should flee, the offence being a misdemeanor, he would not be justified in killing him. But after the offences—misdemeanors—mentioned above have been committed, and the offenders have dispersed, a private person has no authority of himself to arrest the offenders without warrant as just indicated, nor can he go out to make such arrest by the mere order of a Justice of the Peace or any other officer. It is otherwise as to felonies actually committed.

If a private person, of his own purpose, without warrant, undertakes to make an arrest of a party guilty of only a misdemeanor otherwise than in the cases and in the way above pointed out, he at once becomes a trespasser, and the party whom he so undertakes to deprive of his liberty may resist him by such force as may be necessary to defend him-

self successfully. Except in the cases of emergency pointed out private persons should bring such offenders to justice through the proper officers of the law. The law so intends and requires.

In the present case, as we have seen, the deceased had participated in an affray several hours before he was killed, in which he was wounded. That affray was ended, and the deceased had fled at first to the woods. Afterwards, he went to a house, and the inmates dressed his wounds, and he had started on his way home. He was not then committing any breach of the peace, as contemplated · by the statutory provisions above recited. The prisoner pursued him; he resisted (as he might do in his defence) unsuccessfully, turned to fly, and the prisoner at once slew him by a pistol shot. The prisoner had no authority to arrest him, and none whatever to take his life. The excuse offered is that a Justice of the Peace summoned and ordered the prisoner to pursue and arrest him. But the Justice of the Peace, for the reason stated above, had no authority to confer upon the prisoner such power to arrest him; he could do so only by duly issuing a State warrant for him, directed to the prisoner as a private person, in the absence of a proper officer. After the affray was ended, the Justice of the Peace had ample time and opportunity to issue a State warrant for the apprehension of the deceased before he was slain, and for the other offenders. There was no necessity for the unlawful verbal order he gave the prisoner. There was not then any offence in course of perpetration or imminent, as contemplated by the statute. The necessity for the arrest was not then emergent. The mere fact that the deceased was a violent man and had a pistol on his person was no reason for sending the prisoner without a warrant to arrest him; indeed, such fact afforded stronger reason why the law should be observed. As it was not such reason, although the prisoner's intentions may have been sincere, he must suffer for his grave

offence, committed through misapprehension of his authority and duty. The life of a violent man shall not be taken carelessly and recklessly, or otherwise than for crime and in the way provided by law. The law, in its humanity, does not allow human life to be taken except for the gravest crimes and upon the most thorough and solemn scrutiny as to the guilt of the offender. In a matter so momentous all the essential forms of the law should be observed.

Affirmed.