R. J. HOLLOWAY, ADMINISTRATOR OF WATTS HOLLOWAY, v. A. ELSIE
MOSER.

(Filed 26 January, 1927.)

**1. Escape—Convicts—Guards—Misdemeanors.**

The guard has no authority to kill one convicted of a misdemeanor
while fleeing to escape, without his offering resistance or showing any
menace or show of force in doing so, or doing anything that would sug-
gest danger to the person of the guard.

**2. Same—Actions—Civil Liability.**

A civil action will lie to recover damages of a guard for unlawfully
killing a convict under his charge convicted of a misdemeanor, while the
deceased was endeavoring to escape. C. S., 160.

**3. Same—Statutes—Felons—Misdemeanors—Common Law.**

The provisions of C. S., 7745, relate to the authority of a convict guard
in preventing the escape of those under his control, who are convicted of
a felony justifying the guard in using any means necessary to prevent an
escape even to the taking of human life, under justifiable circumstances,
and does not apply when the one attempting to escape has been only
convicted of a misdemeanor, the common law applying in such instances.

**4. Criminal Law—Statutes—Misdemeanors—Common Law—Declaratory
Statutes.**

The offense of breaking prison after being lawfully confined, C. S.,
4404, making it a misdemeanor, is in case of imprisonment for a misde-
meanor, and is declaratory of the common law.

**5. Convicts—Felons—Misdemeanants—Clothing—Escape.**

One of the intentions of the Legislature in enacting C. S., 7730, 7731,
requiring a distinct difference in dress between those convicted of a
felony and misdmeanants, was to apprise the guard over them of this
difference, and where the guard has unlawfully killed one in the latter
class while endeavoring to escape, he may not avoid the consequences of
his act upon the ground that he could not tell for which offense the
prisoner had been sentenced.

APPEAL by plaintiff from *Oglesby, J.,* at September Term, 1926, of
FORSYTH.

Civil action to recover damages for the death of plaintiff's intestate,
alleged to have been caused by the wrongful act, neglect or default of
the defendant.

On motion of the defendant, made at the close of plaintiff's evidence,
judgment was entered as in case of nonsuit, from which the plaintiff
appeals, assigning error.

*J. F. Jordan and F. B. Hendren for plaintiff.*
*Swink, Clement, Hutchins & Feimster for defendant.*

STACY, C. J. The facts are these: On 1 June, 1925, plaintiff's intestate, Watts Holloway, was tried in the recorder's court of the city of Winston-Salem, convicted of carrying a concealed weapon in violation of law, and sentenced, under a special statute, to six months on the county roads of Forsyth County. He was assigned to Camp No. 1, over which the defendant was superintendent and guard. The defendant was also a deputy sheriff of the county. Two days thereafter, on 3 June, while working one of the roads of the county, the defendant ordered the guards in charge to take the force of convicts, about forty in number, including plaintiff's intestate, to a place of safety until a blast of dynamite could be discharged. On returning to their work, following the explosion of the dynamite, Watts Holloway attempted to escape by running across the field and into a thicket about one hundred yards away. One of the guards, F. M. Reid, called three or four times to the plaintiff's intestate to halt, and shot at him as he ran away, but missed him. The defendant thereupon ran out by the side of the road, called to plaintiff's intestate to halt, which he failed to do, and just as he was entering the thicket, running at full speed, the defendant shot him in the back and killed him almost instantly. The father of the deceased brings this action as administrator to recover of the superintendent and guard of the convict camp damages for the death of his son, which he alleges was caused by the wrongful act, neglect or default of the defendant. C. S., 160.

The only question presented by the appeal is whether plaintiff, under the evidence adduced, is entitled to have his case submitted to the jury. We think he is. *Suell v. Derricott,* 161 Ala., 259, 23 L. R. A. (N. S.), 996.

Let it be observed at the outset that plaintiff's intestate was not a felon, nor was he offering forcible resistance to the guards or undertaking to escape by overpowering them. He was a misdemeanant attempting to escape by flight, without endangering the life or limb of those who had him in lawful custody at the time.

It is provided by C. S., 7745, that when a convict, or several combined, shall offer violence to any officer, overseer or guard, or other convict, or attempt to do any injury to the building or workshops of the State prison, or shall attempt to escape, or shall resist or disobey any lawful command, the officer, overseer or guard shall use any means necessary to defend himself, to enforce the observance of discipline, to secure the person of the offender and to prevent an escape.

Under this enactment it is no doubt the law that a guard or overseer of penitentiary convicts would be justified in using any means necessary to prevent an escape, even to the taking of the convict's life, if need be. *Jackson v. State,* 76 Ga., 473; 30 C. J., 42. But this statute, we apprehend, was intended to apply only to the management of con-

victs who are felons, or who have been sentenced to the State prison—all of whom are felons, C. S., 4171—and has no application to the discipline of misdemeanants who have been sentenced to the county roads. We are therefore remitted to the common law, in the absence of any statute covering the subject, for guidance in ascertaining the rights and liabilities of the parties under circumstances such as those disclosed by the present record.

· By the common law an officer, in a case of felony, was permitted to use all force necessary to capture the felon, even to slaying him when in flight. In the case of a misdemeanor, however, the rule was different. The officer could defend himself, if resisted, even to the taking of life, but if the offender were simply fleeing and not resisting, he had no right to kill. It was thought that to permit the life of one charged with a mere misdemeanor to be taken, when not resisting, but only fleeing, would, aside from its inhumanity, be productive of more evil than good.

The reason for the distinction is obvious. Ordinarily, the security of person and property is not endangered by a misdemeanant being at large, while the safety and security of society require the speedy arrest and punishment of a felon.

Bishop says: "The justification of homicide happening in the arrest of persons charged with misdemeanors, or breaches of the peace, is subject to a different rule from that which we have been laying down in respect to cases of felony; for, generally speaking, in misdemeanors it will be murder to kill the party accused for flying from the arrest, though he cannot otherwise be overtaken, and though there be a warrant to apprehend him; but under circumstances, it may amount only to manslaughter, if it appear that death was not intended. . . .

"But in misdemeanors and breaches of the peace, as well as in cases of felony, if the officer meet with resistance and the offender is killed in the struggle, the killing will be justified." 2 Bishop on Criminal Law, secs. 662-3.

· The same rule may be found in the works of the other common-law writers.

Hale in his Pleas of the Crown, p. 481, says: "If a gaoler be assaulted by his prisoner, or if the sheriff or his minister be assaulted in the execution of his office, he is not bound to give back to the wall; but if he kills the assailant, it is in law adjudged *se defendendo,* though he gives not back to the wall; the like of a constable or watchman, for they are ministers of justice, and under a more special protection in the execution of their office, than private persons.

"But if the prisoner makes no resistance, but flies, yet the officer, either for fear that he, or some other of his party will rescue the prisoner, strikes the prisoner, whereof he dies, this is murder, for here was

no assault first made by the prisoner, and so it cannot be *se defendendo* in the officer.

"And here is the difference between civil actions and felonies. If a man be in danger of arrest by a *capias* in debt or trespass, and he flies, and the bailiff kills him, it is murder; but if a felon flies, and he cannot be otherwise taken, if he be killed, it is no felony, and in that case the officer so killing forfeits nothing, but the person so assaulted and killed forfeits his goods."

It was suggested on the argument that a distinction should be made between a case where a person is attempting to avoid arrest, and where he is endeavoring to escape after arrest. If, however, the offender be in flight, and is offering no resistance to the officers at the time, then we apprehend the law to be the same whether he flee to avoid arrest or to escape from custody. Bishop on Criminal Law, sec. 664; Wharton on Homicide, secs. 212-214.

Forcible resistance to the execution of legal warrants, whether by felons or misdmeanants, is not allowed in this jurisdiction. As against those who defy its decrees and threaten violence to its officers, the law commands that its writs be executed, peaceably, if they can; forcibly, if they must. *S. v. Garrett,* 60 N. C., 144. An officer, in making an arrest or preventing an escape, either in case of felony or misdemeanor, may meet force with force, sufficient to overcome it, even to the taking of life, if necessary. *S. v. Dunning,* 177 N. C., 559. And he is not required, under such circumstances, to afford the accused equal opportunities with him in the struggle. He is rightfully the aggressor, and he may use such force as is necessary to overcome any resistance. He is not bound to put off the arrest until a more favorable time. *S. v. McMahan,* 103 N. C., 379; *S. v. Gosnell,* 74 Fed., 734. "His duty is to overcome all resistance, and bring the party to be arrested under physical restraint, and the means he may use must be coextensive with the duty, and so the law is written." *Black, J.,* in *S. v. Fuller,* 96 Mo., 165. If the offender put the life of the officer in jeopardy, the latter may *se defendendo* slay him; but he must be careful not to use any greater force than is reasonably and apparently necessary under the circumstances, for necessity is the ground upon which the law permits the taking of life in such cases. *Head v. Martin,* 85 Ky., 480. It has been said, however, that where officers of the law, engaged in making arrests, are acting in good faith, and force is required to be used, their conduct should not be weighed in golden scales. *S. v. Pugh,* 101 N. C., 737; *S. v. McNinch,* 90 N. C., 696.

Animadverting generally on the subject in *S. v. Bryant,* 65 N. C., 327, wherein the right of a private citizen to arrest a felon without a warrant was involved, *Reade, J.,* delivering the opinion of the Court, said:

"Extreme measures, therefore, which might be resorted to in capital felonies, would shock us if resorted to in inferior felonies. But, in any case where extreme measures are resorted to in making arrests, it must appear that they were *necessary,* and that the felon could not be otherwise taken. It should be noted, also, that the cases where extreme measures have been justified have usually been cases where the felon has actually *resisted.* No man would attempt to arrest a felon if he were not allowed the advantage of overcoming the resistance without subjecting himself to peril. He need not, therefore, engage with the felon on equal terms, but may overcome resistance with superior force, even to the extent of killing the felon if it be necessary. Yet it is said: 'It behooveth them to be very careful that they do not misbehave themselves in the discharge of their duty, for if they do, they may forfeit this special protection.' Foster, ch. 8, sec. 18, p. 319.

"In the quotation from Hale, *supra,* it is said that killing the felon may be justified if he 'resists or flies.' This would seem to put resistance and flight upon the same footing. But this must be understood with some modification. In case of resistance and conflict, the resistance must be overcome *then* and *there,* because, not only is the arrest of the felon involved, but the safety of him who is rightfully making the arrest. But ordinarily there *is* not the same urgency in case of flight; for, although he be not arrested then and there, yet he may be arrested at another time and place. So it would seem that, at any rate, there ought to be pursuit, or a certainty of escape, before killing could be justified; else how does it appear that he 'could not be otherwise arrested?'" See, also, in this connection, *S. v. Stancill,* 128 N. C., 610, and *S. v. Campbell,* 107 N. C., 953.

It is universally held that an officer has no right to kill one who merely flees to avoid arrest for a misdemeanor or to effect an escape from such arrest, even though it may appear that by no other means can the accused be taken or recaptured. 13 R. C. L., 875. It is better that he be permitted to escape altogether than that his life be forfeited, while unresisting, for such a trivial offense. *Caldwell v. State,* 41 Tex., 86. "The law values human life too highly to give an officer the right to proceed to the extremity of shooting one whom he is attempting to arrest for a violation of a municipal ordinance in order to prevent his escape, even though the offender cannot be taken otherwise." *Hill, C. J.,* in *Holmes v. State,* 5 Ga. App., 166, 62 S. E., 716.

There would seem to be no difference in principle between the duty of an officer, and the means he may employ, to hold a misdemeanant, after arrest and before conviction, and the duty of a guard to prevent his escape after he has been convicted and committed to his custody. *Reneau v. State,* 2 Lea (Tenn.), 720, 31 Am. Rep., 626; *U. S. v. Clark,*

31 Fed., 710; *Thomas v. Kinkead,* 55 Ark., 502, 15 L. R. A., 558; *S. v. Turlington,* 102 Mo., 642; 2 Brill's Cyclopedia Crim. Law, sec. 692.

True, in *S. v. Sigman,* 106 N. C., 728, it was said: "After an accused person has been arrested, an officer is justified in using the amount of force necessary to detain him in custody, and he may kill his prisoner to prevent his escape; provided, it becomes necessary (1 Bishop Cr. Pr., sec. 618), whether he be charged with a felony or a misdemeanor." But this language, it should be remembered, was used in reference to a case where one under arrest makes forcible effort to free himself. In the case then before the Court the prisoner sought to be apprehended by the officers had entirely escaped, and was fleeing to avoid arrest, when one of the officers, being unable to overtake him, fired at the accused. This was held to be an unlawful assault on the part of the officer. Hence, there was no occasion for deciding whether the shooting would have been justified if it had been done in an effort to prevent an escape by flight. Indeed, in the very same case it was also said: "But a very different principle prevails where a party charged with a misdemeanor flees from an officer, who is entrusted with a criminal warrant, or *capias,* in order to avoid arrest. The accused is shielded in that event, even from an attempt to kill with a gun or pistol, by the merciful rule which forbids the risk of human life or the shedding of blood in order to bring to justice one who is charged with so trivial an offense, when it is probable that he can be arrested another day and held to answer." Similar rulings were approved in *S. v. Dunning,* 177 N. C., 559; *Sossamon v. Cruse,* 133 N. C., 470; *S. v. Stancill,* 128 N. C., 606; *S. v. Pugh,* 101 N. C., 737; *S. v. McNinch,* 90 N. C., 695; *S. v. Bryant,* 65 N. C., 327, and *S. v. Stalcup,* 24 N. C., 50. See, also, *S. v. Finch,* 177 N. C., 599, for a valuable discussion of these principles.

In *Reneau v. State,* 2 Lea (Tenn.), 720, the facts were that one Vineyard Thomas was committed to jail for failure to pay a fine and cost in assault and battery, a misdemeanor, and in the execution of a *mittimus,* issued by the justice of the peace for the purpose, Reneau, a constable, started with Thomas to the county jail, accompanied by another as guard. On the route Thomas started to run and make his escape. Neither officer pursued, but after commanding him three times to halt, and not being obeyed, Reneau fired two shots at Thomas, one of which took effect, killing him almost instantly. The officer was tried and convicted of an unlawful homicide, manslaughter, and this was affirmed on appeal.

Speaking to the subject in *Brown v. Weaver,* 76 Miss., 7, *Whitfield, J.,* says: "In Mr. Bishop's new Criminal Law (8th ed., sec. 647, par. 3, note 1), Mr. Bishop cites *Jackson v. State,* 76 Ga., 473, to the proposition that 'after an arrest, whether for felony or misdemeanor, or

during an imprisonment, the life of the prisoner may be taken, if necessary to prevent the escape.' That was the case of a guard killing a convict in the penitentiary, who, he supposed, was trying to escape. It supports the proposition that an officer may kill a convicted felon trying to escape from imprisonment for felony, but it furnishes no support to the doctrine that an officer may kill a misdemeanant who is merely effecting his escape after arrest, or from imprisonment for mere misdemeanor, by simply running away. If Mr. Bishop means merely to say that when a misdemeanant, after arrest, tries to 'break away,' violently resisting or assaulting the officer, the officer may kill him, as in self-defense, to prevent the infliction of a felony upon himself, the doctrine is sound, and not in conflict with the cases he criticizes. But if he means to say, as we understand him, that an officer may kill a misdemeanant whom he has arrested, and who eludes the officer, and gets away from him without resisting the officer, and without employing any force, while such misdemeanant is effecting his escape merely by running away, then such doctrine is not sound, in our judgment, and is unsupported by the authorities. 3 Russell on Crimes (6 ed.), p. 132, *Holroyd, J.,* saying: 'An officer must not kill for an escape, where the party is in custody for a misdemeanor.' McLain, in his Criminal Law (1897), sec. 298, approves *Reneau v. State, supra,* criticized by Mr. Bishop, and lays down the doctrine we have announced, and points out the very distinction we have just above drawn, as being the only ground of support for Mr. Bishop's doctrine, saying: 'It is probable, however, that even as to preventing escape, the officer is justified in taking life only to prevent escape for felony, or where, the offense being a misdemeanor, in resisting force with force, his own life is put in peril, and not where he takes life merely to prevent escape of one charged with a misdemeanor.' Substituting for 'where his own life is put in peril,' 'where, in killing, he does so to save his own life, or prevent the infliction of a felony upon himself,' this is the sound doctrine."

It is provided by C. S., 4404, that if any person shall break prison, being lawfully confined therein, or shall escape from the custody of any superintendent, guard or officer, he shall be guilty of a misdemeanor. This, it appears, is only declaratory of the common law, so far as misdemeanants are concerned, and has the effect, as held in *S. v. Brown,* 82 N. C., 585, of reducing the common-law felony of prison-breaking to a misdemeanor.

As we have seen, at the common law, with its regard for human life, an officer attempting to arrest an offender for a misdemeanor, or to prevent his escape after arrest, was not permitted to kill when the accused was simply fleeing. And it is not believed that the law in this respect has lost any of its humanity. We have found no expression of

the law-making body in this State which would seem to make it more rigorous or to restrain its mercy. C. S., 4393, was not intended to have such effect. Certainly, without legislative authority, the severity of a remote age ought not to be exceeded in dealing with those convicted only of small offenses.

The suggestion that the defendant could not tell whether plaintiff's intestate was a felon or a misdemeanant, and that he acted in good faith, thinking that he had a right to shoot, cannot excuse him, if, in fact, he had no such right under the law. *Campbell v. People,* 55 Col., 302, 133 Pac., 1043. It was no fault of plaintiff's intestate that the defendant failed to observe the class of criminals to which he belonged. By C. S., 7730, it is made the duty of the several judicial officers of the State, in assigning any person to work the public roads of any county, to designate in each judgment that such as may be convicted of a felony shall wear felon's stripes, and such as are convicted of a misdemeanor shall not wear felon stripes. And by C. S., 7731, it is made unlawful for any superintendent of convicts, or other person in authority, to work persons convicted of a felony in other than the uniform of a felon, or to clothe a person convicted of a misdemeanor in the uniform of a felon. No doubt, one of the purposes of the Legislature in enacting these statutes, and requiring that felons and misdemeanants be dressed differently, was to enable those having them in charge to distinguish at a glance the class to which each belongs. Such measures should be employed to secure misdemeanants, assigned to work on the public roads, as will enable the guards to hold them in custody without resorting to unlawful means.

There was error in entering judgment as of nonsuit. This will be reversed and the cause remanded for trial before a jury.

Reversed.