THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ALFRED K. LARSEN, PLAINTIFF IN ERROR.

Argued May 2, 1928—Decided February 21, 1929.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the plaintiff in error, *Wilbur A. Mott* and *George T. Vickers.*

For the state, *Johnson V. Aller,* prosecutor of the pleas, and *George K. Large.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The defendant, Larsen, was convicted in the Hunterdon Court of Quarter Sessions of an atrocious assault and battery upon one James Meaney, the assault consisting of the shooting of the latter with a revolver. A writ of error was thereupon sued out to review the validity of that conviction.

The first ground upon which a reversal is sought is that the verdict of the jury is against the weight of the evidence. The undisputed proofs of the case show that the defendant, with two agents of the S. P. C. A., went to the Meaney farm for the purpose of arresting Timothy Meaney, a brother of James. The defendant was a state trooper. He and his associates searched the Meaney house, but were unable to find Timothy there. On leaving it they ran across James in a lane leading to the house. There was a woman with him. The defendant walked up to James and asked him if he was Timothy, stating that he had a warrant for the latter's arrest. James said that he was not, and then, after some argument, during which James ordered these men off of the place, the

defendant arrested him for interfering with an officer while serving a warrant, and took him to the patrol wagon, which had been parked at some little distance away. While engaged in doing this Timothy arrived with a shotgun, and drove the defendant and his associates away. They ran their car some little distance down the road, and then got out. In the meantime James had left the spot where the patrol wagon had been parked, and walked a way down the road. The defendant and his associates having got out of their wagon, stood there talking together and then Larsen heard someone walking along the road and went to see who it was. He got near enough to this person to see that it was a man, and, concluding that it was Timothy Meaney, called on him to stop and said he would shoot him if he did not halt. The man to whom the order was given turned out to be James and not Timothy. He did not stop when ordered to do so, and thereupon Larsen shot him, still believing, as he claimed, that it was Timothy, that he still had the shotgun with him, and that he was about to fire the gun at him. As a matter of fact, James had no weapon with him with which to shoot. After wounding him, Larsen, instead of arresting him as the person named in the warrant, turned and walked back to the patrol wagon, leaving his victim lying in the road. On the facts recited it seems clear to us that the finding of the jury was justified; that it was not against the weight of the evidence, but, on the contrary, was fully supported by it.

The next contention made on behalf of the defendant is that the court erroneously permitted counsel for the state, on the cross-examination of Larsen, who was a witness in his own behalf, to ask him certain questions with relation to whether or not changes were made by him in the report which he originally returned to his superior officer. The answers of the witness showed that no changes had been made in his original report, but that additions were made thereto at the suggestion of his superior officer. We see nothing erroneous in the admission of these questions. Counsel for the defendant devote fifteen lines of their brief to a discussion of this phase of the case, and we are not convinced by it of the

soundness of their contention. The apparent purpose of the questions was to show that the original report was contradictory of certain statements made by him on an earlier occasion, and also to some extent of the testimony given by him on his direct examination. The questions were competent for the purpose of affecting the credit of the defendant as a witness.

The next contention is that the court in certain portions of the charge to the jury limited the defense so as to deprive the defendant of his legal rights. It is somewhat difficult to understand just what is meant by this statement. The specific instructions which are made the subject of attack are as follows: "The defense is that this officer was in the performance of a legal duty, namely, the serving of a warrant, and that under the circumstances the shot which he fired was justified. It is for you to determine, applying the rules of law to the state of facts, as to whether the officer was within his rights in firing such a shot. Within reasonable limits, the amount of force that he must apply to effect an arrest by an officer holding a legal warrant is necessarily left to the sound discretion of the officer, and the officer is responsible only for a wanton abuse of such force." It is not suggested by counsel that legal error exists in any part of the cited extract. Apparently their theory is that there should have been something added to the instruction indicating the applicability of the legal principles stated by the court to the situation in which the defendant, Larsen, found himself when he fired the shot. But, if they had desired such an extension of the charge, they should have submitted a proper request for it. This they failed to do; and they cannot now successfully seek a reversal of the defendant's conviction upon the ground that the charge was not sufficiently explicit upon the point indicated when the lack of such explicitness was the result of their own failure. As was held in *State* v. *Barone*, 96 *N. J. L.* 417, an omission to charge a proposition, even though applicable to the facts of the case, cannot be made the basis of an assignment of error without a request to charge.

Lastly, it is contended that the court erroneously defined the crime charged in the indictment. The indictment charged the crime of atrocious assault with a dangerous weapon. What the court did was to define the crime of assault and battery, and not that of atrocious assault. This instruction was, of course, entirely irrelevant. It had no bearing on the case. But we are unable to see that it was harmful. Nor does the argument of counsel enlighten us in this respect. The case comes before us under the broad power of review conferred by section 136 of our Criminal Procedure act (*Comp. Stat., p.* 1863), and that section contains the following provision: "No judgment given upon any indictment shall be reversed * * * for any error except such as shall or may have prejudiced the defendant in maintaining his defense upon the merits." Not being able to perceive any basis for holding that this slip of the trial judge did or could have prejudiced the defendant in maintaining his defense, we conclude that the immaterial statement contained in the charge affords no ground for reversal. It may be well to add that, as has already been pointed out herein, if counsel had desired an instruction as to what constituted an atrocious assault, they should have submitted a request for it. This, however, they did not see fit to do.

The judgment under review will be affirmed.