FRANK SMITH v. RALEIGH GRANITE COMPANY AND R. G. LASSITER AND COMPANY.

(Filed 2 March, 1932.)

1. Trial D a—On motion of nonsuit only evidence favorable to the plaintiff will be considered.

Upon a motion as of nonsuit the evidence will be considered in the light most favorable to the plaintiff, and only evidence tending to support his cause of action will be considered. C. S., 567.

2. Master and Servant C b—Evidence of failure of one hiring State convicts to provide reasonably safe place to work held sufficient.

Where the plaintiff's evidence tends to show that the defendant hired State convicts to work in his rock quarry and had control of the convicts to the extent of indicating the work to be done by them, that the plaintiff, one of the convicts so hired out, was told by the defendant to shovel rock from a pile so that it could be taken out by a drag pan which was pulled backward and forward by a cable operated by a steam ·engine, that the cable was frayed and that the plaintiff had repeatedly told the engineer, the defendant's *alter ego*, of its dangerous condition, that at the time of the injury the plaintiff was not actually under the control of the prison authorities, and that the plaintiff, in the performance of his duties, told the engineer to pull the drag pan forward, but the engineer pulled it back and that the plaintiff's clothes caught in the frayed cable, causing the injury in suit, is *Held*, sufficient to be submitted to the jury on the issue of the defendant's failure to exercise due care to provide the plaintiff a reasonably safe place to work.

3. **Master and Servant C a—Employer is ordinarily liable for negligence of alter ego.**

The duty of an employer to exercise due care to provide his employee a reasonably safe place to work and reasonably safe and suitable tools and appliances is absolute and may not be delegated to another so as to relieve the employer of liability, and the employer is ordinarily liable for the negligence of his *alter ego* which causes injury to an employee.

4. **Same—Although one hiring State convicts is not strictly an employer he owes certain duties to them arising from the relation.**

Although the relationship of master and servant does not exist in the strict sense of the term between State convicts and one hiring their labor from the State, the one hiring such labor owes certain duties to the convicts incident to the relationship, and in this case the evidence of the failure of the one hiring such convicts to exercise due care to provide a reasonably safe place to work and the negligence of his *alter ego* causing injury to a prisoner was properly submitted to the jury.

5. **Master and Servant C e—In this case held: engineer was alter ego of employer and not fellow servant of employee.**

Under the facts and circumstances of this case an engineer in charge of a hoisting engine was an *alter ego* of the defendant and the refusal of instructions requested by the defendant relating to the fellow-servant doctrine was not error.

6. **Evidence D h: Trial B f—Exception to corroborative testimony will not be sustained when no request that it be restricted is made.**

Where an employee has testified to the dangerous condition of a wire cable used in the performance of the work, an exception to the admission of the testimony of another witness as to the condition of the cable will not be sustained where the other witness properly identifies the cable in question and testifies that he saw it a week after the injury in suit, the evidence being competent as corroborative evidence at least, and there being no request that the testimony be restricted for that purpose.

7. **Trial E c—Charge in this case held sufficient when construed as a whole.**

Where, in an action by an employee for a negligent personal injury, the trial court has correctly charged the law applicable to the facts on the issues of negligence, contributory negligence, and has fully charged the law relating to the question of proximate cause, the defendant's exception to the failure of the court to repeat in other parts of the charge the law of proximate cause will not be held for error, the charge being correct when taken as a whole.

APPEAL by the defendant Raleigh Granite Company from *Moore, Special Judge,* at September Term, 1931, of PITT. No error.

This is an action for actionable negligence brought by plaintiff against the defendants.

The contention of plaintiff was to the effect that he was a Negro and sent to the penitentiary for an attempt to kill. That the officials of the State prison of the State of North Carolina hired certain convicts to

work in the rock quarries of defendant, Raleigh Granite Company, including himself. The defendant Raleigh Granite Company admits that it had no control over plaintiff "other than to indicate the work which the plaintiff was to do." That the Raleigh Granite Company failed in its duty to plaintiff in the exercise of reasonable or due care to provide for plaintiff a safe place to work and appliances safe and suitable for the work which he was instructed to do, and to keep same in safe condition in the exercise of proper care and supervision. That the engineer of the hoisting engine, an *alter ego,* was negligent in the operation. That the failure of these duties were the proximate cause of the injury to plaintiff.

The evidence on the part of plaintiff was to the effect that he was sent to the rock quarry belonging to defendant Raleigh Granite Company. He was put to work by the "boss" of defendant Granite Company, on top of a rock pile. He was given a shovel to push rock down from a rock pile so that a scoop or drag pan could remove it. The drag pan was pulled by a standard three-quarter wire rope, or cable, 6-ply, 19-strand. One pulled it backward and one pulled it forward, they ran through the pulley. The drag pan was pulled forward and backward by the man on the engine, the engineer. The drag pan weighed about 700 or 800 pounds.

The plaintiff worked at this place about two weeks before his injury. The plaintiff testified, in part, that the wire rope or cable "was ragged and old and had a whole lot of frazzles on the rope and looked like it would break any time. Those frazzles were out of that wire. . . . I told the man pulling that wire that it had frazzles sticking up on it and was liable to break any time. . . . I told him about three times and he never did fix it. The same night I was hurt I told him. I told him before that. I told him the night before and he never did fix it and the next night I got caught in it. He or the company did not make any repair of the rope."

The night plaintiff was injured was dark and there was a drizzling rain, the lights went out and when they came on "I couldn't see like I ought to." The injury happened between ten and eleven o'clock at night.

Plaintiff further testified: "I was pushing them rocks down with this shovel and while I was pushing them down I hollered to the man to go forward and instead of going forward he sent it back and that caught my hand and coat, and wound it around up in there and pulled it through the pulley. By reason of that I was injured. There wasn't anything ailed me before that. It cut off my fingers. I told the man in charge of the engine to go ahead and instead of hauling the shovel forward he pulled it back. That flapped the wires against me. . . .

Nobody has ever given me any instructions but to push those rocks down. I did what he told me. I got hurt while doing what he told me. The lights went out just as I was pushing them on down."

Lewis Smith, uncle of plaintiff, testified, in part: "I asked him was he the boss man of that business and he told me yes, and I told him my sister's son got hurt up there and I would like to see him and he told me he was gone to the hospital. I told him how did he get hurt. He told me he got hurt with that there machine up there on the rock pile. I went on around down there to look at it. It has been over three years ago. It was a week after he got hurt when I went up there. . . . That cable had a wheel where that cable went through the pole. The right-hand side of the cable had frazzles on it next to this pan. That right-hand side looked like it had frazzles on it. It looked like it was an old rope. . . . There was frazzles here about that long (indicating), looked like little bristles standing out. Looked like they would tear. I don't know about wrapping around. Those cable wires will catch you and bring you in if you have got on clothes."

The defendant, Raleigh Granite Company, denied any negligence and set up the plea of contributory negligence. There was evidence introduced by defendant to sustain its contentions.

The defendant, Robert G. Lassiter and Company, in further answer "Denies that the plaintiff was employed by or working for this defendant under any contract with the State Prison authorities, or otherwise, and denies that it owns or did own at the time of the alleged injury of which the plaintiff complains, any interest in the Rolesville Quarry mentioned and described in the complaint, and denies that the plaintiff was or has been engaged in any work of any kind under any arrangement with anybody for this defendant."

At the close of plaintiff's evidence, Robert G. Lassiter and Company, made a motion for judgment as in case of nonsuit, which the court below granted.

The issues submitted to the jury and their answers thereto were as follows:

"1. Was the plaintiff injured by the negligence of the defendant (Raleigh Granite Company) as alleged in the complaint? Answer: Yes.

2. Did the plaintiff, by his own negligence, contribute to his injury, as alleged in the answer? Answer: No.

3. What damages, if any, is the plaintiff entitled to recover? Answer: $1,125."

The court below rendered judgment on the verdict. The Raleigh Granite Company made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones will be considered in the opinion.

*Peter R. Hines and Julius Brown for plaintiff.*

*Parham & Lassiter and Albion Dunn for defendant Raleigh Granite Company.*

CLARKSON, J. The defendant, Raleigh Granite Company, in the court below, at the close of plaintiff's evidence, and at the conclusion of all the evidence, made motions for judgment as in case of nonsuit. C. S., 567. These motions were overruled and in this we can see no error.

We think the evidence, taken in a light most favorable to plaintiff, sufficient in this case to have been submitted to the jury. We only consider the evidence of plaintiff. It was a question for the jury and not for us; nor do we find any error in the trial of the action in the court below.

All the evidence was to the effect that the Raleigh Granite Company had control of the plaintiff "to indicate the work which the plaintiff was to do," and did so indicate the work at the place where the plaintiff was injured. At the time plaintiff was not actually under the control of the State Prison authorities. *Jenkins v. Griffith,* 189 N. C., 633; *Reeves v. Construction Co.,* 194 N. C., 817. Under the facts and circumstances of this case the Raleigh Granite Company owed plaintiff a duty that is well settled in this jurisdiction.

In *Beck v. Tanning Co.,* 179 N. C., at p. 125, we find: "It is unquestionably the duty of the master to use proper care in providing a reasonably safe place where the servant may do his work, and reasonably safe machinery, implements, and so forth, with which to do the work assigned to him (*West v. Tanning Co.,* 154 N. C., 44), and this duty is a primary, and an absolute one, which he cannot delegate to another without, at the same time, incurring the risk of himself becoming liable for the neglect of his agent, so entrusted with the performance of this duty which belongs to the master, for in such a case, the negligence of the agent, or fellow-servant, if he is appointed to act for the master, is the latter's neglect also," citing numerous authorities. *Beck v. Chair Co.,* 188 N. C., 743; *Parker v. Mfg. Co.,* 189 N. C., 275; *Thomas v. Lawrence,* 189 N. C., 521. Liability frequently attaches when injury is caused by negligence of *alter ego,* to aggrieved party. *Howard v. Oil Co.,* 174 N. C., at p. 653.

Speaking to the subject, we find in 21 R. C. L. "Prisons and Prisoners," part sec. 26, p. 1089-90, the following: "While, in a sense, the relation of master and servant may be said to exist between a prisoner and the lessee of his labor, and some authorities so hold, the relation cannot be said to exist in the strict sense, because the service is not voluntary, or for hire or reward, and also because the control exercised by the con-

tractor over the convict is usually limited. Consequently it has been held that where the State, by officers of its own selection, retains the immediate and direct supervision and control of leased convicts, the hirer thereof is not liable to the prisoner for injuries due to negligent acts which he has no power to prevent. He is, however, held to a master's liability to the convict in respect to those incidents of the employment over which he has the same measure of control that a master ordinarily has. Therefore, it is held that he is not relieved of the ordinary care towards convicts which he is required to exercise towards his employees, and he will be liable to them for failure to provide a safe place in which to work and for knowingly bringing vicious persons into contact with them. The contractor is also bound to see that the appliances with which the prisoner is working are reasonably safe. . . . But where the prisoner of his own volition chooses an unusually dangerous method of executing the contractor's commands, he may be barred by contributory negligence." See *Holloway v. Moser,* 193 N. C., 185.

Under the facts and circumstances of this case, we do not think that the engineer of the hoisting engine was a fellow-servant of plaintiff, therefore the prayer for instruction by the Raleigh Granite Company to that effect cannot be sustained. *Thompson v. Oil Co.,* 177 N. C., at p. 282; *Robinson v. Ivey,* 193 N. C., at p. 812; *Pyatt v. R. R.,* 199 N. C., at p. 404.

The exceptions and assignments of error as to the testimony of plaintiff's uncle cannot be sustained. A week after plaintiff's injury, he saw the place and the wire cable and described its condition at that time. This was a circumstance—some evidence. Then again, this may not be prejudicial, the evidence was to the effect that the engineer of the hoisting engine, an *alter ego,* who according to plaintiff's evidence he "hollered to the man to go forward and instead of going forward he sent it back and that caught my hand and coat," etc.

In *Blevins v. Cotton Mills,* 150 N. C., at p. 498, we find the following: "It may be well to note that the doctrine we are now discussing refers to the objective conditions, where, from the facts and circumstances, it is reasonably probable that no change has occurred, and must not be confused with the position which obtains with us, that voluntary changes made by an employer after an injury to an employee, and imputed to the employer's negligence, are not, as a rule, relevant on the trial of an issue between them." *Almond v. Oceola Mills, Inc., ante,* at p. 100; 10 R. C. L. "Evidence," sec. 112, p. 943. The evidence was undoubtedly competent to corroborate the plaintiff and no request was made that it be restricted. See latter part of Rule 21 of Practice in the Supreme Court, 200 N. C., at p. 827 and cases cited.

COMMISSIONER OF BANKS *v.* WHITE.

We think the special instructions asked for by defendant properly refused by the court below. It will be noted that the court below submitted an issue of contributory negligence and charged the law on this aspect applicable to the facts. In the charge of the court below we find no error, taking the charge as a whole. The court below charged correctly what was negligence, and further "that such negligent breach of duty was the proximate cause of the injury, the cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed."

The defendants' contentions that in other parts of the charge proximate cause is not repeated, we cannot say, if error, it was prejudicial. In the judgment of the court below, we find

No error.