33 N.J. Super. 420 (1954)
110 A.2d 339
JACK S. NOBACK, A MENTAL INCOMPETENT, BY HIS GUARDIAN AD LITEM, MARION B. NOBACK, PLAINTIFF,
v.
TOWN OF MONTCLAIR, A MUNICIPAL CORPORATION OF NEW JERSEY, AND CANIO RUSSO, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 30, 1954.
*421 Mr. Charles E. Villanueva argued the cause for plaintiff (Messrs. Van Riper & Belmont, attorneys).
Mr. Merritt Lane, Jr., argued the cause for defendant Canio Russo (Messrs. McCarter, English & Studer, attorneys).
*422 EWART, J.S.C.
Plaintiff Jack S. Noback, of Montclair, N.J., now or formerly a patient in the Essex County Hospital at Overbrook, by his guardian ad litem, Marion B. Noback, prosecutes this action against the Town of Montclair, and against Canio Russo, a police officer of that town, for an alleged atrocious assault and battery committed upon him by the defendant police officer on September 24, 1951 by shooting him in the back with a 38-caliber revolver and by striking him in the back and on the head with the revolver and for false arrest and false imprisonment.
On motion, summary judgment was entered against the plaintiff and in favor of the Town of Montclair on June 15, 1954.
Plaintiff now moves under R.R. 4:58 for a summary judgment against the individual defendant Russo "* * * as to his liability, leaving damages as the only issue to be tried. The plaintiff will rely upon the pleadings filed in this cause, the depositions heretofore taken, and the pretrial order."
In the first count of the complaint, plaintiff charges that on September 24, 1951 the defendant Russo did commit an unlawful, atrocious assault and battery upon him by shooting him in the back with a revolver and by striking him in the back and on the head with a revolver, by reason whereof he was grievously wounded and suffered great physical and mental pain and was forced to incur large expenses for medical, hospital and nursing services, and that by reason of his wounds he has been disabled from earning a livelihood. And plaintiff further charges the defendant Russo on the date mentioned with false arrest and false imprisonment. However, at the argument on this motion plaintiff waived all claims for false arrest and for false imprisonment and relies only on the charge of atrocious assault and battery.
Defendant's answer first denies the charges generally and by way of separate defense pleads that the defendant Russo, a police officer of the Town of Montclair, observed the plaintiff in the commission of a violation of law; that he attempted to arrest the plaintiff, but the plaintiff forcibly resisted; and *423 that after having been arrested, the plaintiff forcibly broke away from the officer in an attempt to escape, whereupon the defendant officer was compelled to and did use force to apprehend and prevent the escape of the plaintiff, "using no more force than was reasonably necessary to apprehend and to prevent the escape of the plaintiff from arrest under the circumstances there present."
The pretrial order in this case, bearing date May 24, 1954, contains no admissions of value, but does contain a recital of the defendant's contention, as follows:
"that he observed the plaintiff in the commission of a violation of the laws of the State of New Jersey, viz. annoying and disturbing a young girl on the public sidewalk as a disorderly person by statute and by Town ordinance; and that in the course of arresting the plaintiff, the plaintiff forcibly resisted arrest and after having been arrested forcibly broke away in an attempt to escape, whereupon Russo was compelled to use such force as was necessary to apprehend and prevent the plaintiff's escape from the arrest.
Factually, Russo contends that on the day in question he had seen the plaintiff act in a suspicious manner and later had seen him stalking a girl who was afraid of the plaintiff and who was backing up. Russo went up to the plaintiff, who had a wild look in his eyes, and the girl and went to arrest him and actually grabbed him by his right arm placing him under arrest, but he broke away. Russo caught up with him and again grabbed him, but again he broke away and ran down the street escaping. After firing four warning shots and yelling to the plaintiff to stop, Russo was compelled to fire at his legs to prevent his escaping. The sixth bullet shot struck the plaintiff, but even at that time, although he was knocked down, he did not stop but continued on and Russo then overtook him and had a difficult time subduing him. At no time did Russo strike the plaintiff."
Deposition of the defendant Russo was taken on March 25, 1954, and at that time he testified under oath concerning the subject matter of this suit substantially as follows:
That he had been a police officer in the Town of Montclair for some 13 years; that about the hour of 7:15 to 7:30 A.M. on September 24, 1951 he was on duty and in uniform and near the intersection of Watchung and North Fullerton Avenues in the Town of Montclair, about 25 feet off the northwest corner of the intersection, he noticed the plaintiff and a young girl of about 16 years of age on the *424 sidewalk; that he could see the girl was afraid and was backing up and that she had a startled look on her face; that the plaintiff was advancing toward the girl and she was backing up; the defendant officer pulled his motorcycle to the side of the road opposite where the plaintiff and the girl were on the sidewalk, got off his machine and walked over to the plaintiff and said, "Come here. I want to talk with you"; the plaintiff walked away from the officer, saying "Leave me alone. I have a right to talk to any girl I please"; the officer then caught up with the plaintiff and grabbed the plaintiff by the right arm, and the plaintiff pulled away from the officer and crossed the street with the officer after him and the officer grabbed him by the arm again on the opposite side of the street and the plaintiff again broke away from the officer and ran down the sidewalk on the north side of Watchung Avenue; the officer took after the plaintiff and was running at full speed, but the plaintiff was getting away; the officer shouted "Stop, stop," but plaintiff kept on going; the officer then removed his pistol from its holster and again called out "Stop, stop, or I'll shoot." The plaintiff failed to stop but kept running and the officer fired his revolver four times, shooting into the ground; the plaintiff still kept running and the officer aimed his fifth shot at the plaintiff's legs but missed his mark and the sixth shot the officer again aimed at the plaintiff and the bullet hit the plaintiff and the plaintiff fell to the ground; after being knocked down by the bullet, the plaintiff again arose and the officer had a terrific struggle in subduing him and was assisted by a citizen in bringing the plaintiff under control. At that time the officer noticed that the plaintiff was injured and was bleeding; a police ambulance was called, a blanket was put around the plaintiff and plaintiff was placed in the ambulance and taken to the Mountainside Hospital. The defendant officer testified, "When I saw him, he was stalking the girl. He was walking around her * * *, Miss McPherson was backing away from him, and he was going around her and he was so close to her that I would say he was 6 or 8 inches or more, that close to the girl, when I *425 pulled up alongside of the two of them." And further, referring to the plaintiff, "He was stalking her; yes. He circled right around her and she was trying to back away from him"; that every time the girl took a backward step the plaintiff went closer to her, but that he did not have a hold of her; that as soon as the officer pulled up on his motorcycle to the curb and got off, the plaintiff started to walk away, east; that when the officer fired at the plaintiff the sixth time, the plaintiff was 100 feet or more away; that the officer did not see the plaintiff put his hands on the girl, nor did the officer hear the plaintiff say anything to the girl, nor did he hear the girl say anything to the plaintiff, nor did the plaintiff have anything in his hands so far as the officer could see; that the officer did not remember whether he put the plaintiff under arrest, but did say to the plaintiff "Come with me"; that the officer cannot remember whether he told the plaintiff he was under arrest; that it was a 38-caliber Colt revolver with which the officer shot the plaintiff; that he did not shoot the plaintiff with any intention of taking the plaintiff's life, but with the intention of maiming him and bringing him down; that he shot at the plaintiff's legs. The officer further testified:
"A. Counselor, my feeling at that time was when that man escaped me, I just couldn't understand why that man ran away and why would he run away from a policeman. He must have done something wrong. He must have been guilty of something. I didn't know whether it was just that particular incident. I didn't know whether it was something that he was afraid that he had done. I did not know that, but not knowing that man, I had to get that man. I had never had anyone get away from me as long as I have been a policeman, and I just had to get that man and bring him in so if he had done something wrong or not, we would have found that out at headquarters.
Q. I take it that you had no information at the time that he was wanted any other place for any other offense?
A. No, sir.
Q. Or that he had committed any offense any other place?
A. I knew nothing about him.
Q. You had no information at all?
A. No.
Q. You didn't know his name?
A. No.
*426 Q. And you didn't know anything about his background?
A. No, sir; I didn't."
Assuming for the purpose of this motion the truth of the defendant's statements as contained in his deposition, the plaintiff at the time of his attempted arrest on September 24, 1951 was a disorderly person in that he did molest or interfere with another person on a public highway. N.J.S. 2A:170-29B (source: R.S. 2:202-7 and 2:202-8). And the violation of the Disorderly Persons Act having been committed in the presence of the defendant police officer, as stated in his deposition, the officer was within his rights in placing the plaintiff under arrest without a warrant. N.J.S. 2A:169-3. 1 Schlosser, New Jersey Criminal Law (Rev. Ed.), sec. 716 and cases therein cited.
Giving full credence to the position of the defendant officer, as revealed in the pretrial order, and to his statements under oath as set forth in his deposition, the facts and circumstances surrounding the shooting of the plaintiff by the defendant are in no wise in dispute. The pretrial order and the defendant's deposition affirmatively disclose that on September 24, 1951 in the Town of Montclair he intentionally shot the plaintiff with a 38-caliber revolver at a distance of 100 feet or more while the plaintiff, to avoid capture and arrest by the officer, was fleeing after having been guilty of acts committed in the presence of the officer which constituted a violation of the Disorderly Persons Act. The shooting was not done by the officer in defense of his person while attempting to make an arrest, nor was it done to capture a fleeing felon.
In view of these undisputed facts, I am of the opinion that the act of the defendant officer in purposely shooting the fleeing plaintiff in order to effect his capture for a violation of the Disorderly Persons Act, cannot be legally justified; that the defendant officer was guilty of using excessive force to effect the capture; and that the plaintiff in this action is entitled as a matter of law to an interlocutory judgment establishing defendant's liability for an atrocious assault and battery, leaving it to a jury to assess damages. R.R. 4:58-3.
*427 The law appears to be well established that a police officer in effecting an arrest has the right to use such force as appears reasonably necessary, being responsible, however, for the use of any excessive force, or for the wanton abuse of discretion in determining the amount of force reasonably required to effect the arrest. Brown v. State, 62 N.J.L. 666 (E. & A. 1898); Bullock v. State, 65 N.J.L. 557, 572 (E. & A. 1900); State v. Rogers, 105 N.J.L. 15 (Sup. Ct. 1928), affirmed 105 N.J.L. 654 (E. & A. 1929); State v. Larsen, 105 N.J.L. 266, 269 (Sup. Ct. 1928); Antwine v. Jones, 14 N.J. Super. 86, 88 (App. Div. 1951); Restatement, Torts, secs. 131, 132, 133; Bishop, New Criminal Procedure (2d ed.), secs. 160-161; and Wharton, Criminal Law (12th ed.), sec. 829. And if the officer meet with resistance in effecting a lawful arrest, he may repel force with force even to the extent of killing the offender if that extremity become necessary in order to effect the arrest or to protect himself from serious bodily injury. Antwine v. Jones, supra; 1 Schlosser, New Jersey Criminal Law (Rev. Ed.), sec. 196; 2 Bishop, Criminal Law (9th ed.), secs. 647 (1) and 650; Bishop, New Criminal Procedure (2d ed.), secs. 160 and 161; 1 Wharton, Criminal Law (12th ed.), sec. 829; Annotation, 4 Am. Jur., page 52, secs. 73 and 74.
While a police officer may be justified in shooting or killing an escaping felon, either before or after an arrest, if the offender cannot otherwise be captured (Brown v. State, 62 N.J.L. 666, 703 (E. & A. 1898); Holloway v. Moser, 193 N.C. 185, 136 S.E. 375, 50 A.L.R. 262 (Sup. Ct. 1927); Commonwealth v. Duerr, 158 Pa. Super. 484, 45 A.2d 235, 239 (Super. Ct. 1946); 1 Schlosser, New Jersey Criminal Law (Rev. Ed.), sec. 196; Annotation, 4 Am. Jur., pages 56 and 57, sec. 80; Restatement, Torts, sec. 131; 4 Blackstone 492), yet a different rule prevails when the fleeing person endeavoring to escape arrest is charged with a misdemeanor, or breach of the peace, or with being a disorderly person. In the latter cases, the officer has no right to either shoot or kill the fleeing offender even though there be no other way of preventing the fleeing person from escaping. In *428 Justice Depue's charge to the Essex grand jury in 1886, 9 N.J.L.J. 167, he said at pages 168 and 169:
"If a police officer having lawfully made an arrest, and using proper means for that purpose, be resisted, he may lawfully repel force by force, in order to prevent an escape, and if the person making resistance is unavoidably killed in the struggle the homicide is justifiable. And in cases where the charge is felony, the killing of the accused before the arrest is actually made will be justifiable, if in no other way the escaping felon could be taken. If in the pursuit the felon be killed when he cannot be otherwise overtaken, the homicide is justifiable.
But a different rule prevails when the person fleeing and endeavoring to escape arrest is charged with a misdemeanor or a breach of the peace. In these cases the officer has no right to kill the accused to prevent his escape, and if he do so intentionally the offence is murder, and if he resorts to shooting, not intending to kill, but merely to disable or frighten the person escaping, the shooting, though unjustifiable, amounts to manslaughter only."
The following authorities support the statement of law expressed by Justice Depue: 1 Schlosser, New Jersey Criminal Law (Rev. Ed.), sec. 196; Holloway v. Moser, supra; 2 Bishop, Criminal Law (9th ed.), secs. 37(4) and 649; 1 Wharton, Criminal Law (12th ed.), sec. 532; Restatement, Torts, Illustration No. 1 under sec. 131 and Comment under sec. 135; Annots., 3 A.L.R. pages 1173 and 1174 and 42 A.L.R. pages 1200, 1202 and 1203.
Police officers must learn, if they are not already aware, that there are definite limitations upon the amount of force that may be used by them in arresting a citizen charged with a crime or with a violation of the Disorderly Persons Act; that they may be held liable, both civilly and criminally, for the use of excessive force either in making a lawful arrest or in attempting to capture a fleeing offender; and that the law will not countenance the shooting or killing of a fleeing offender charged merely with a misdemeanor, breach of the peace, or violation of the Disorderly Persons Act.
Interlocutory judgment will accordingly be entered in favor of plaintiff and against the defendant, establishing liability of the defendant for having committed an atrocious assault and battery by shooting upon the person of the plaintiff, leaving it to a jury to assess the damages.